IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Albert H. BEAVER, Attorney at Law.

Supreme Court

*No. 91–2159–D. Filed February 2, 1994.*

(Also reported in 510 N.W.2d 129.)

PER CURIAM. *Attorney disciplinary proceeding; attorney's license suspended.*

This is an appeal by Attorney Albert H. Beaver from the referee's findings of fact and conclusions of law and recommendation that the court suspend his license to practice law for 90 days as discipline for professional misconduct. The referee concluded that Attorney Beaver engaged in "offensive personality," in violation of the Attorney's Oath, by verbally threatening to kill a man who was an adversary party in pending litigation and by striking and pushing that man's vehicle with his own. The referee further concluded that Attorney Beaver made misrepresentations to the Board of Attorneys Professional Responsibility

(Board) during its investigation of a client's grievance concerning his withdrawal from that client's representation in a criminal matter.

We adopt the referee's findings of fact and conclusions of law concerning Attorney Beaver's misconduct and determine that the recommended license suspension is appropriate discipline to impose for that misconduct. Attorney Beaver's threats and attack on an adverse party in pending litigation, who was also a neighbor with whom Attorney Beaver had an antagonistic relationship, reflect adversely on his fitness to be licensed to practice law and his misrepresentations to the Board constitute a serious breach of his professional duty to this court.

Attorney Beaver was admitted to practice law in Wisconsin in 1978 and practices in Sturgeon Bay. He is currently suspended from practice for nonpayment of State Bar dues and for failure to comply with continuing legal education requirements. He has not previously been the subject of an attorney disciplinary proceeding. Following a disciplinary hearing, the referee, Attorney John E. Shannon, Jr., made the following findings of fact.

In 1985, a man retained Attorney Beaver to represent him in matters related to securities issued by the client's companies. Attorney Beaver represented him in various securities-related matters, including a John Doe proceeding. Following that proceeding, the client was charged with some 20 counts of criminal conduct and a trial was scheduled for March 2, 1987. Attorney Beaver appeared as attorney in that matter from the client's initial appearance on February 26, 1986 until February 9, 1987, when he filed a motion to withdraw, less than one month before the scheduled trial. After the court permitted Attorney Beaver to

14

withdraw and granted a continuance, the client proceeded pro se and was convicted on multiple counts of securities violations and fraud.

When the client filed grievances with the Board concerning Attorney Beaver's withdrawal from his representation and the Board requested a response, Attorney Beaver gave as his reason for withdrawing that he had taken financial information concerning the client's companies to a certified public accountant who years earlier had been retained by the client and that the accountant found approximately 110 items, totaling approximately $7.2 million, that the client had improperly used. Attorney Beaver reported to the Board that the accountant in effect had told him he could not "put on a case" in the client's defense.

In fact, however, the accountant made no such statement to Attorney Beaver. Further, the referee found that the accountant had made no statements indicating that he believed funds had been improperly used by the client, never said anything about the 110 items totaling approximately $7.2 million, never said or implied to Attorney Beaver in any way that the accountant believed the client was guilty of wrongdoing or that the accountant believed he could not testify on the client's behalf at trial and never said anything that would lead Attorney Beaver to believe he could not put on a defense for the client. The referee concluded that Attorney Beaver engaged in misrepresentation in his disclosure to the Board of the reasons for his withdrawal from representation of the client, in violation of SCR 22.07(2).[1]

---

[1] SCR 22.07 provides:

**Investigation.**

. . .

The other matter considered in this proceeding concerned Attorney Beaver's conduct in an ongoing dispute with adjoining property owners. In 1986, Attorney Beaver and a former client formed a non-stock, not-for-profit corporate foundation to turn a portion of the former client's resort property into a music school for gifted and talented handicapped children. Abutting that property on the north was a condominium development built on 500 feet of shore frontage that had been purchased from the former client. Shortly after incorporating the foundation, Attorney Beaver purchased a unit in the condominium development in trust for the benefit of his mentally and physically handicapped daughter and occupied it with his wife and daughter.

Some of the condominium residents, including one David Thompson, opposed Attorney Beaver's project. Mr. Thompson and Attorney Beaver had a minor altercation at a restaurant when Mr. Thompson threatened to stop the project. Two weeks later, Mr. Thompson complained to the Department of Natural Resources that Attorney Beaver was building a retaining wall on his property without a permit; Attorney Beaver promptly reported to the DNR that the condominium development was dumping raw sewage onto the foundation's property.

Attorney Beaver then commenced a fraud action in federal court on behalf of his former client alleging that the condominium developers had forged the legal

---

(2)  During the course of an investigation, the administrator or a committee may notify the respondent of the subject being investigated. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct or medical incapacity within 20 days of being served by ordinary mail a request for response to a grievance. . . . Failure to provide information or misrepresentation in a disclosure is misconduct. . . .

description in the deed to the property they purchased from the former client in 1984. Soon thereafter, the condominium development filed an action in state court against the foundation and Attorney Beaver as its president alleging interference with its easement for sanitary waste disposal on the foundation's property.

In attempting to settle the pending actions, the attorney for the condominium development suggested that Attorney Beaver vacate the condominium unit he had purchased. The condominium association then filed a foreclosure action against the trust in whose name the unit had been purchased.

While this dispute was in progress, Attorney Beaver received several anonymous hate letters and a death threat on his law office answering machine. Believing that Mr. Thompson was responsible for the letters and message, Attorney Beaver filed a third-party complaint in the easement action claiming the individual condominium unit owners' attempts to get him out of the condominium violated state and federal housing discrimination laws in respect to his daughter's handicap.

During a break in the deposition of a witness in the federal action, the attorney for the condominium development, Marie Stanton, asked Attorney Beaver why he had filed the third-party complaint against the condominium unit owners in the easement action when the parties were discussing settlement of the existing actions. Attorney Beaver became very upset, angry and flushed and began to cry. He expressed an intense dislike for Mr. Thompson, who was Attorney Beaver's common-wall neighbor in the condominium development as well as president of the condominium association, calling him a "son of a bitch," and said that

17

if Mr. Thompson ever came to his door or across his threshold, Attorney Beaver would shoot him. He said he kept a gun by his bed or by his door and that he would blow Mr. Thompson's head off.

The lawyers then terminated the deposition and Attorney Stanton, Attorney Beaver and Attorney Beaver's co-counsel discussed the possibility of renewing settlement negotiations. During that discussion, Attorney Beaver told Attorney Stanton that the dispute between him and the condominium development was "a war to the death." It was agreed that the time for answering the third-party complaint would be stayed but Attorney Beaver never returned Attorney Stanton's stipulation to that effect. Eventually the third-party complaint was dismissed for failure to prosecute.

Trial of the easement action commenced in October, 1988 and after a day and a half, the only matter remaining in the plaintiffs' case was Mr. Thompson's testimony. Because Mr. Thompson was unavailable due to illness, the trial was adjourned until the second week of December, 1988.

During that adjournment, an incident occurred on a road that had been the subject of dispute for over a year. Attorney Beaver had claimed the road was part of the property the foundation had purchased from his former client; others, including the condominium unit owners, believed it was a public road. In early October, 1988, the town of Egg Harbor had posted a sign on the road stating, "Hutter Road—Owned And Maintained by the Town of Egg Harbor For Public Use to the Waters of Green Bay. By Order of the Egg Harbor Town Board."

In early November, Attorney Beaver was operating a tractor with a bucket on the front on the foundation's property near the road. Passing the prop-

erty in their car, Mr. Thompson and his wife noticed large construction vehicles being operated on the property and drove down the road to see what was going on. Attorney Beaver drove his tractor up alongside the Thompson vehicle and told the Thompsons to get off the road because it was private property; Mr. Thompson responded that it was a town road. Attorney Beaver then moved his tractor up against the front of the Thompson automobile, placed the bucket under the car's bumper and pushed the car approximately 200 feet backwards onto an adjoining county trunk highway, causing stress and anxiety to the Thompsons and damage to their vehicle. Attorney Beaver ultimately pleaded no contest to a disorderly conduct ordinance violation, paid a fine and paid for the replacement of the bumper of the Thompson automobile.

The referee concluded that in this matter Attorney Beaver violated the provision of the Attorney's Oath by which attorneys swear to abstain from "offensive personality"[2] by making statements and threats against

---

[2] The Attorney's Oath required to be taken in order for a person to qualify for admission to the practice of law is to be in substantially the form set forth in SCR 40.15:

> **Attorney's oath.** The oath or affirmation to be taken to qualify for admission to the practice of law shall be in substantially the following form:
>
> I will support the constitution of the United States and the constitution of the state of Wisconsin;
>
> I will maintain the respect due to courts of justice and judicial officers;
>
> I will not counsel or maintain any suit or proceeding which shall appear to me to be unjust, or any defense, except such as I believe to be honestly debatable under the law of the land;
>
> I will employ, for the purpose of maintaining the causes confided to me, such means only as are consistent with truth and honor, and will never seek to mislead the judge or jury by any artifice or false statement of fact or law;

Mr. Thompson to the condominium development's attorney and by striking and pushing the Thompson vehicle and causing anxiety and stress to the Thompsons and damage to their vehicle, thereby engaging in professional misconduct, as specified in SCR 20:8.4(g).[3] The referee rejected the Board's assertion that Attorney Beaver's conduct in this matter violated the rule, SCR 20:3.1, that prohibits a lawyer from taking action on behalf of a client when the lawyers knows or when it is obvious that it would serve merely to harass or maliciously injure another because there was no showing that when he confronted the Thompsons, Attorney Beaver was acting on behalf of his client in the pending litigation.

Appealing from the referee's findings, conclusions and recommendation that the court suspend Attorney Beaver's license to practice law for 90 days as discipline for his professional misconduct, Attorney Beaver first argued that the referee's findings that he had made misrepresentations during the Board's investigation of his withdrawal from the criminal client's representation were not established by clear and satisfactory

---

I will maintain the confidence and preserve inviolate the secrets of my client and will accept no compensation in connection with my client's business except from my client or with my client's knowledge and approval;

I will abstain from all offensive personality and advance no fact prejudicial to the honor or reputation of a party or witness, unless required by the justice of the cause with which I am charged;

I will never reject, from any consideration personal to myself, the cause of the defenseless or oppressed, or delay any person's cause for lucre or malice. So help me God.

[3] SCR 20:8.4 provides:

**Misconduct.**
It is professional misconduct for a lawyer to:

. . .
(g)   violate the attorney's oath.

20

evidence and were clearly erroneous. That argument rested entirely on Attorney Beaver's contention that the testimony of the accountant regarding what he had told Attorney Beaver about his conclusions in respect to the client's financial records was incredible, contradictory and internally inconsistent. There is no merit to that argument. Attorney Beaver acknowledged that the determination of the credibility of the accountant's testimony, compared to his own testimony, was for the referee to make and he has failed to show that the referee's assessment of the credibility of the witnesses was erroneous.

Challenging the referee's conclusion that he engaged in "offensive personality" by his threats and vehicular confrontation with Mr. Thompson, Attorney Beaver contended that the "offensive personality" provision of the Attorney's Oath is unconstitutionally overbroad and vague. He asserted that its restriction on his right of speech does not advance any identifiable legitimate state interest and impinges on broad categories of constitutionally protected speech. He further asserted that less restrictive means, such as the provisions of the Rules of Professional Conduct for Attorneys, SCR chapter 20, are available to advance any legitimate state interest to which the "offensive personality" provision might be directed. Attorney Beaver also contended that the provision does not give a person of ordinary intelligence fair notice of what conduct it proscribes and, consequently, is unconstitutionally vague. He asserted that the term "offensive personality" is not susceptible of comprehension by resort to an attorney's professional training and experience.

We reject Attorney Beaver's constitutional challenge. Standing alone, the term "offensive personality"

does not denote with any specificity the kind of conduct to which it applies; it conceivably would include conduct the court, acting on behalf of the state, has no legitimate interest in prohibiting. However, as applied here, that term does not exist in a vacuum; it is one of several provisions of the oath this court administers to those it licenses to practice law in the state by which they swear to meet certain standards and responsibilities of the profession. Moreover, the provisions of that oath are expressly incorporated into the rules promulgated by this court governing the professional conduct of attorneys and under those rules a violation of the Attorney's Oath constitutes professional misconduct.

Thus, the context in which the term "offensive personality" is used and its application to lawyer disciplinary proceedings restrict its meaning to conduct that reflects adversely on a person's fitness as a lawyer.[4] Rejecting an overbreadth argument challenging the Attorney's Oath provision requiring an attorney to maintain the respect due to courts of justice and judicial officers, we said, "License to practice law in this state is granted on implied understanding that an attorney shall at all times demean himself in proper manner and refrain from such practices which bring disrepute upon himself, the profession and the courts. This implied understanding is also affirmed by the oath taken by the attorney on admission to practice." *State v. Eisenberg,* 48 Wis. 2d 364, 380–81, 180 N.W.2d 529 (1970).

The legitimate state interest which the provisions of the Attorney's Oath, including the "offensive person-

---

[4] Compare, SCR 20:8.4(b), which declares it is professional misconduct for a lawyer to "commit a criminal act that reflects adversely on a lawyer's honesty, trustworthiness or fitness as a lawyer in other respects."

ality" provision, advance is the regulation of those licensed by the state, acting through this court, as officers of the state's legal system. A greater degree of flexibility and breadth is permitted in respect to the rules and standards by which this court regulates the legal profession than is allowed in criminal statutes, as the court has recognized in the context of judicial disciplinary rules and statutes. *In Matter of Complaint Against Seraphim,* 97 Wis. 2d 485, 497, 294 N.W.2d 485 (1980). That flexibility and breadth is not exceeded by the "offensive personality" provision—not only by virtue of the limiting context in which it is promulgated but also in light of the limited contexts in which it has been applied.

The court has determined that the following conduct constituted "offensive personality" in violation of the Attorney's Oath and imposed discipline, in part, for that conduct: an attorney's twice urging the driver of an automobile in which he was a passenger to run over a supporter of persons opposing the lawyer in a local election, *State v. Ledvina,* 71 Wis. 2d 195, 237 N.W.2d 683 (1976); mailing insulting letters and cartoons to a man with whom the attorney was embroiled in a lengthy controversy, *Id.;* circulating copies of marriage and birth certificates embarrassing to supporters of an opponent, *Id.;* making derogatory personal remarks about opposing counsel in closing arguments to a jury, *Disciplinary Proceedings Against Eisenberg,* 144 Wis. 2d 284, 423 N.W.2d 867 (1988); threatening a client with legal action if the client did not pay the lawyer's fee prior to completion of the legal work and repeatedly using abusive language when the client wanted to discuss the lawyer's bill, *Disciplinary Proceedings Against Strasburg,* 154 Wis. 2d 90, 452 N.W.2d 152 (1990);

23

trading surreptitiously taken photographs of nude minors without their consent, *Disciplinary Proceedings Against Bruckner,* 161 Wis. 2d 385, 467 N.W.2d 780 (1991). The "offensive personality" in all of those cases concerned an attorney's conduct in the course of the practice of the profession or in circumstances that led to a criminal conviction. Thus, the court has limited the scope and application of the "offensive personality" provision of the Attorney's Oath and it does not reach a substantial amount of constitutionally protected conduct or significantly inhibit an attorney's exercise of the right of free speech.[5]

We also reject Attorney Beaver's constitutional challenge to the "offensive personality" provision on the ground of vagueness. The context in which that provision is promulgated and the cases to which it has been applied render the term understandable by a person who has been licensed as an officer of the court. Attorney Beaver cannot be heard to argue that he lacked adequate notice of the kind of conduct from which he swore to abstain when he was admitted to the practice of law in Wisconsin.

Attorney Beaver's final argument is that the referee erroneously concluded that he engaged in professional misconduct by his threats and acts against Mr. Thompson. He based that contention on the absence of factual findings in the referee's report concerning Attorney Beaver's claim that Mr. Thompson had unjustifiably threatened and harassed him in

___

[5] "In a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct." *Hoffman Estates v. The Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 494 (1982).

opposing his project to build a music school. That argument has no merit. The referee made findings sufficient to support his conclusions that Attorney Beaver engaged in professional misconduct in the matter and the absence of findings concerning Attorney Beaver's claim suggests that the referee had determined that claim to be irrelevant to the issue of his misconduct. Also without merit is Attorney Beaver's assertion that his forcible removal of the Thompson vehicle from what he contended was private property was justified because he had told Mr. Thompson the road was private property and that he was trespassing. Attorney Beaver's reliance on the trespassing statute, which permits the use of reasonable force to terminate unlawful interference with property, is misplaced.

■■

Attorney Beaver's misconduct determined in this proceeding warrants the imposition of the 90-day license suspension recommended by the referee as discipline. It is significant that his conduct toward Mr. Thompson was directed against a party in pending litigation in which Attorney Beaver represented an adverse party and that concerned property in which Attorney Beaver had a personal interest. Moreover, it was directed at a witness who had yet to testify in the case. Attorney Beaver's misrepresentations to the Board during its investigation of his conduct in the representation of a criminal client constituted a serious breach of his duty to cooperate in that investigation.

In addition to the license suspension, the referee recommended that Attorney Beaver be required to pay the costs of this proceeding. Attorney Beaver objected to those costs in respect to the fees of counsel for the Board, claiming that the Board and its counsel failed to make a reasonable inquiry into the facts concerning

allegations of misconduct set forth in two counts of the Board's disciplinary complaint that the Board subsequently dismissed prior to the disciplinary hearing. We reject Attorney Beaver's contention that he is entitled to a reduction in the costs attributed to Board counsel fees and credited with a portion of his own attorney fees incurred in this proceeding on the basis of those dismissed allegations. It appears that the Board conducted a reasonably thorough investigation of grievances that had been filed against Attorney Beaver and held an investigative hearing at which Attorney Beaver appeared and testified. Moreover, there is no showing that the Board's dismissal of the allegations of its complaint was not done promptly in the course of this proceeding.

IT IS ORDERED that the license of Albert H. Beaver to practice law in Wisconsin is suspended for a period of 90 days, commencing February 28, 1994.

IT IS FURTHER ORDERED that within 60 days of the date of this order Albert H. Beaver pay to the Board of Attorneys Professional Responsibility the costs of this disciplinary proceeding, provided that if the costs are not paid within the time specified and absent a showing to this court of his inability to pay the costs within that time, the license of Albert H. Beaver to practice law in Wisconsin shall remain suspended until further order of the court.

IT IS FURTHER ORDERED that Albert H. Beaver comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.