IN RE: DISCIPLINE OF J. MICHAEL SCHAEFER.

No. 36173

June 21, 2001                                    25 P.3d 191

---

[1]*Noland v. Westinghouse Elec. Corp.,* 97 Nev. 268, 269 n.1, 628 P.2d 1123, 1125 n.1 (1981) (citations omitted).

[Rehearing denied September 10, 2001]

*J. Michael Schaefer* and *Potter Law Offices,* Las Vegas, for attorney John Michael Schaefer.

*Rob W. Bare,* Bar Counsel, and *Michael J. Warhola* and *Felicia Galatti,* Assistant Bar Counsel, for State Bar of Nevada.

## OPINION

*Per Curiam:*

Two formal disciplinary complaints representing four griev-
ances against attorney John Michael Schaefer were brought by the

state bar and were consolidated for hearing before a panel of the Southern Nevada Disciplinary Board. The panel found that Schaefer had violated several professional conduct rules, including Supreme Court Rule 182, which prohibits a lawyer from directly contacting a represented party without the consent of that party's counsel, unless the contact is otherwise authorized by law. Some of the SCR 182 violations found by the panel occurred during the course of litigation in which Schaefer was representing himself. Schaefer asserts that he did not violate SCR 182 by contacting represented parties while he was representing only himself.

We conclude that the purposes underlying SCR 182 are better served by applying the rule to lawyers representing themselves, as well as when representing other clients. But given the existence of conflicting authority from other jurisdictions and the absence of guidance from this court on the rule's scope at the time of Schaefer's actions, SCR 182 is unconstitutionally vague as applied to Schaefer's conduct when he was representing himself. Accordingly, these violations cannot be considered in determining the appropriate discipline to be imposed. We conclude, however, that the bulk of the remaining violations are supported by clear and convincing evidence, and that disbarment is warranted in light of Schaefer's conduct.

## FACTUAL AND PROCEDURAL HISTORY

### First disciplinary complaint

The first disciplinary complaint filed against Schaefer included three counts. Count I of the first complaint alleged violations of SCR 151 (competence), SCR 170 (meritorious claims), SCR 172 (candor toward the tribunal), SCR 173 (fairness toward opposing party and counsel), and SCR 203(3) (misconduct involving dishonesty, deceit, fraud or misrepresentation). Count II alleged violations of SCR 172 (candor toward the tribunal) and SCR 203(3) (misconduct involving dishonesty, deceit, fraud or misrepresentation). Count III alleged violations of SCR 173 (fairness toward opposing party and counsel), SCR 182 (communication with person represented by counsel) and SCR 203(4) (conduct prejudicial to the administration of justice).

### Counts I and III

Counts I and III were based on Schaefer's conduct during the litigation of several disputes between Schaefer and his condominium association. Schaefer is president of Schaefer, Inc., which owns several condominium units at Wimbledon Tennis Club Condominiums in Southern Nevada. Schaefer lives in one of the

units; the others are leased to tenants. He has had several disputes with his neighbors and with the Wimbledon Tennis Club Condominium Association (the "Association"). The record reflects that in 1996 and 1997, these disputes became so pervasive that realtors attempting to market other condominium units were compelled to disclose to potential buyers that a litigious attorney lived there.

The first litigation pertinent to this case was commenced in March 1997. On behalf of Schaefer, Inc., Schaefer filed a complaint against the Association, seeking a permanent injunction that would preserve his voting rights in the Association and confirm his eligibility to run for the Association's governing board. The Association stipulated to this relief, and the court approved the stipulation; no costs were awarded to either party. Schaefer was directed to prepare the order. Despite the fact that no costs were awarded, Schaefer included an award of costs to Schaefer, Inc., in the draft order. He then submitted the order to the court for signature, without providing it to opposing counsel for approval despite counsel's request that he do so. The court inadvertently entered the order. When opposing counsel became aware of the order, he asked Schaefer to stipulate to the entry of an amended order deleting the cost award. Schaefer refused, and so opposing counsel was required to file a motion to amend the order, which the court granted.

In April 1997, Schaefer filed an action against the Association and its board members, alleging that they conspired to have another resident assault him. Two weeks later, Schaefer was charged with five counts of misdemeanor battery. One of the complaining witnesses was a Mrs. Fox, the spouse of an Association board member; another was the resident with whom the Association board members had allegedly conspired. Schaefer was later convicted of two counts of misdemeanor battery, after which post-trial proceedings continued for approximately one year. Those proceedings included a motion for a new trial and an appeal.

During the criminal case, the justice's court verbally issued a "no-contact" order, expressly prohibiting Schaefer from having any contact with Mrs. Fox. At the time the order was entered, Schaefer and the Foxes all lived in the condominium complex.

After the no-contact order was entered, and while the criminal case was still pending, the Foxes moved to a house in Las Vegas. On the evening of March 9, 1998, Schaefer went to their house and knocked on the door. Mrs. Fox answered and demanded that he leave immediately. Schaefer gave her a handwritten letter for Mr. Fox. In the letter, Schaefer offered to dismiss Mr. Fox as a defendant in the conspiracy case if the Foxes agreed to cooperate

with Schaefer in the criminal case. Schaefer also left his business card with a note referencing the letter on the windshield of the Foxes' car.

During the disciplinary proceedings in this case, Schaefer admitted in both his written papers and his testimony at the hearing that he knew Mr. Fox was represented by counsel in the conspiracy case, and that the no-contact order was in effect at the time of this encounter.

In August 1997, Schaefer filed an action seeking a receiver for the Association. Named as plaintiffs were Schaefer, Inc., an individual resident, and a family trust that owned one of the units. Five days before the complaint was filed, the trustee had left on an extended trip to Europe. The trustee did not authorize Schaefer to file a complaint and was not aware that the trust had been included as a plaintiff.

When the trustee returned to Las Vegas, she discovered the litigation. A receivership was contrary to the trust's best interests, as the trustee was trying to sell the unit owned by the trust and a receivership could cloud the title and impair the marketability of the unit. The trustee notified Schaefer of her anger and unwillingness to be a party to the litigation. Schaefer responded with a letter attempting to persuade the trustee to change her mind, and asking her to sign a sworn statement granting retroactive authorization for the lawsuit. The trustee refused and notified the Association's attorney that Schaefer was not authorized to represent the trust.

In his testimony at the disciplinary hearing, Schaefer admitted that he did not notify the trustee of his intent to initiate a receivership complaint, that he neither requested nor received the trustee's authorization to act for the trust, and that he improperly commenced legal proceedings on behalf of the trust. He asserted in his trial brief to the hearing panel that he had previously represented the trustee in other unrelated matters, and that he felt he had a ''certain leeway'' to represent her interests while she was away.

Schaefer also directed written communication to six Association board members in an effort to persuade them to join the receivership action as plaintiffs. He did so even though he was aware that the Association was represented by counsel.

The action was dismissed, and Schaefer was sanctioned $5,000 for filing a frivolous complaint. As of the date of the disciplinary hearing in this matter, over two years later, Schaefer still had not paid the sanctions.

Schaefer and the Association's counsel engaged in negotiations for a global settlement of the pending litigation, with the exception of Schaefer's conspiracy action, which was being handled by

the Association's insurance defense counsel. During the settlement negotiations, Schaefer repeatedly directed communications to the Association's president, despite Schaefer's knowledge that the Association was represented by counsel, in an attempt to coerce the president into dismissing counsel. Schaefer also asked to be substituted in as counsel for the Association, despite the fact that he was counsel for an adverse party (Schaefer, Inc.) in the litigation. The president was greatly disturbed by these communications, and his wife was frightened because Schaefer had slipped some of the communications under their door late at night. Schaefer also contacted several board members about the settlement without counsel's consent.

In both his written papers before the hearing panel and in his testimony at the hearing, Schaefer admitted to authoring the letters at issue, and that he attempted to have himself substituted as counsel for the Association.

### Count II

Count II of the first complaint was based on Schaefer's failure to disclose his disciplinary history in a pro hac vice application to a Texas court. Schaefer filed the application in order to represent a trust of which he was trustee. In his affidavit, dated in November 1998, he represented that he had not been subject to discipline for any events occurring within the last five years, but admitted that he had received a public reprimand for conduct occurring in December 1992, before the five-year period.

Schaefer's affidavit was inaccurate and misleading. In fact, Schaefer had been publicly reprimanded in California in 1993 for conduct that occurred at least in part in 1993, and received a public reprimand from this court as reciprocal discipline in 1995. Schaefer was also suspended in California in October 1997, for which he also received reciprocal discipline in Nevada in May 1998. Schaefer failed to disclose this disciplinary history to the Texas court.

The panel found that Schaefer had violated SCR 172 (candor toward the tribunal), SCR 203(3) (misconduct involving dishonesty, deceit, fraud or misrepresentation) and SCR 203(4) (conduct prejudicial to the administration of justice).

### Second disciplinary complaint

A second disciplinary complaint was filed after the first complaint, and contained one count. This count alleged violations of SCR 151 (competence), SCR 172 (candor toward the tribunal), SCR 182 (communication with person represented by counsel), SCR 197 (communication with prospective clients) and SCR 203(4) (conduct prejudicial to the administration of justice). The

charges were based on Schaefer's conduct during litigation between Schaefer and Mirage Resorts, Inc.

Schaefer filed two lawsuits on his own behalf against Mirage Resorts, Inc., and its subsidiaries. The claims asserted were based on Mirage's refusal to extend credit to Schaefer, and its decision to bar Schaefer from all Mirage properties. While these cases were pending, Schaefer was specifically instructed by general counsel for Mirage Resorts, Inc., to direct all communication through him. Despite this instruction, Schaefer repeatedly sent letters to various representatives of the Mirage companies, including the Mirage Resorts CEO, the Mirage Resorts secretary, the Bellagio general counsel, who had been named as a defendant in one of the suits, the Bellagio president, the Mirage general counsel, and two attorneys in the Mirage general counsel's office. All of the communications referred to the pending cases; some also mentioned that Schaefer owned Mirage stock. The panel found that Schaefer violated SCR 182 by communicating directly with officers, directors and employees of the Mirage concerning the pending litigation.

## Disciplinary proceedings

The two disciplinary complaints were consolidated for formal hearing before a hearing panel of the Southern Nevada Disciplinary Board. The record reflects that Schaefer and the state bar orally agreed in June 1999 to set the hearing for November 17, 1999, and this date was confirmed by both parties in written correspondence. The state bar served formal notice of the hearing on Schaefer by certified mail, return receipt requested, on October 13, 1999. The return receipt was signed on October 14, 1999.

On October 23, 1999, Schaefer moved to continue the hearing, claiming that the press of other work, including a campaign for public office in San Francisco, prevented him from preparing for the hearing. The state bar opposed the motion. An order denying the motion to continue was entered by the chair of the Southern Nevada Disciplinary Board on November 5, 1999.

The day before the November 17 hearing, Schaefer's counsel and bar counsel were engaged in settlement discussions. By the end of the day, it appeared that an agreement had been reached for a conditional guilty plea in exchange for a stated form of discipline. Based on this agreement, bar counsel notified the seven anticipated witnesses that they need not appear, and informed the panel members that instead of a full hearing, there would be a presentation of the agreement for approval.

At the November 17 hearing, Schaefer's counsel indicated that, contrary to his advice, Schaefer would not accept the plea agree-

ment without a ruling from the panel on the scope of SCR 182, specifically, whether it applied to an attorney appearing on his own behalf. Schaefer's counsel then withdrew. The panel asked bar counsel whether the state bar would agree to severing the SCR 182 violations from the rest of the case, and bar counsel explained that the state bar would not agree. Accordingly, as no witnesses were present, the panel had no alternative but to continue the hearing.

Schaefer stated that he needed to obtain new counsel. The panel chair suggested that Schaefer should do so immediately, as every attempt would be made to reschedule the hearing as soon as possible. Schaefer indicated that he needed only a week's notice. Bar counsel explained that given the schedules of bar personnel, the panel members, Schaefer and his new counsel, and the witnesses, the continued hearing would likely be in "January sometime." The continued hearing was set for January 4, 2000, notice of which was served on Schaefer by certified mail, return receipt requested, on November 30, 1999; the return receipt was signed by Schaefer on December 6, 1999. On December 16, 1999, Schaefer moved for a continuance of the January 4 date; the motion was denied on December 23, 1999.

After the hearing and receipt of post-trial briefs from both Schaefer and the state bar, the panel issued its findings and recommendation.

In connection with the counts based on the litigation with the Association, the panel found that Schaefer had committed one violation of SCR 170 (meritorious claims), one violation of SCR 173(3) (fairness to opposing party and counsel: disobeying obligation to tribunal), one violation of SCR 173(6) (fairness to opposing party and counsel: request that witness refrain from providing information), three violations of SCR 182 (communication with represented person), one violation of SCR 203(1) (violation of the rules of professional conduct), one violation of SCR 203(2) (criminal act reflecting adversely on lawyer's fitness to practice), one violation of SCR 203(3) (misconduct involving dishonesty, deceit, fraud or misrepresentation) and four violations of SCR 203(4) (conduct prejudicial to administration of justice).

In connection with the Texas case, the panel found that Schaefer had violated SCR 172 (candor toward the tribunal), SCR 203(3) (misconduct involving dishonesty, deceit, fraud or misrepresentation), and SCR 203(4) (conduct prejudicial to administration of justice). With respect to the Mirage Resorts litigation, the panel found that Schaefer had violated SCR 182 (contact with represented persons).

The panel also found that the aggravating factors of a pattern of misconduct, multiple offenses, and a refusal by Schaefer to

acknowledge the wrongfulness of his actions had been shown by clear and convincing evidence. Based on these findings, the panel recommended that Schaefer be disbarred.

## DISCUSSION

We are presented with several issues in this case. First, we must determine whether SCR 182, a rule of professional conduct that prohibits lawyers from directly contacting represented parties, applies to communications by a lawyer appearing pro se. If so, we must decide whether the rule may constitutionally be enforced in this case. A related issue is whether a lawyer who is a corporate principal, and who litigates on behalf of the corporation, may be considered to be appearing "pro se." With respect to the hearing panel's findings and recommendation, we must decide whether the ethical violations found by the panel are supported by clear and convincing evidence, and if so, whether disbarment is the appropriate discipline. Finally, Schaefer raises a procedural issue concerning the scheduling of the formal hearing.

*Scope of SCR 182*

SCR 182 provides:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

The purpose of the rule is generally regarded as twofold: first, it prevents lawyers from taking advantage of laypersons, and second, it preserves the integrity of the attorney-client relationship.[1] The rule also prevents inadvertent disclosure of privileged information by the layperson.[2] The issue in this case is whether the word "client" in the introductory phrase includes the lawyer himself, or means only a separate person who retains the lawyer.

Schaefer argues that SCR 182 does not prohibit a lawyer who is representing himself in a case from directly contacting another party to the case who is represented by counsel. In support, Schaefer cites to the commentary to ABA Model Rule 4.2, which is nearly identical to SCR 182, as well as authority from other

---

[1]ABA Comm. on Ethics and Professional Responsibility, Formal Op. 95-396 (1995); *see Faison v. Thornton,* 863 F. Supp. 1204, 1213 (D. Nev. 1993) (recognizing that SCR 182 is "designed to preserve the integrity of the attorney-client relationship").

[2]ABA Comm. on Ethics and Professional Responsibility, Formal Op. 95-396 (1995).

jurisdictions holding that SCR 182 does not prohibit a lawyer representing himself from contacting represented parties.

Comment 1 to Model Rule 4.2 provides that "parties to a matter may communicate directly with each other."[3] The comment does not specifically address the situation of a lawyer appearing pro se. Courts in some jurisdictions that have adopted Model Rule 4.2 have concluded that the rule does not prohibit contact when the lawyer represents himself.[4]

The majority of courts considering the issue, however, have noted that the purposes served by the rule are equally present when the lawyer appears pro se.[5] The lawyer still has an advantage over the average layperson, and the integrity of the relationship between the represented person and counsel is not entitled to less protection merely because the lawyer is appearing pro se. Consequently, these courts have enforced the rule in situations where a pro se lawyer makes direct contact with a represented party.

The state bar's Standing Committee on Ethics and Professional Responsibility came to the same conclusion in a 1988 nonbinding formal opinion ("Formal Opinion 8").[6] The committee determined that SCR 182 applies to a lawyer appearing pro se, and bars the lawyer from directly contacting an opposing party who is represented by counsel.[7] We agree, and conclude that the purposes of the rule are better served by applying it to lawyers who are representing themselves.

A related issue is whether a lawyer who litigates on behalf of a corporation of which he is a principal is subject to the rule's restrictions on contact. Schaefer argues that SCR 44, which provides that nothing in the Supreme Court Rules prohibits a person from representing himself in any court except the supreme court,

---

[3]American Bar Association, *Annotated Model Rules of Professional Conduct* 397 (4th ed. 1999).

[4]*See, e.g., Pinsky v. Statewide Grievance Committee,* 578 A.2d 1075 (Conn. 1990); California Rule of Professional Conduct 2-100 cmt. (discussing California's version of Model Rule 4.2, nearly identical to Nevada's SCR 182, and stating that a lawyer who is also a party may communicate on his own behalf with a represented party, as the lawyer has independent rights as a party that are not abrogated by his professional status).

[5]*See, e.g., Runsvold v. Idaho State Bar,* 925 P.2d 1118 (Idaho 1996); *In re Segall,* 509 N.E.2d 988 (Ill. 1987); *Sandstrom v. Sandstrom,* 880 P.2d 103 (Wyo. 1994); *see also* D.C. Bar Legal Ethics Comm., Op. 258 (1995).

[6]State Bar of Nevada Standing Comm. on Ethics and Professional Responsibility, Formal Op. 8 (1988).

[7]*Id.*

together with SCR 2(8), which provides that "person" includes a corporation, means that he is entitled to represent Schaefer, Inc., as a pro se litigant. Thus, according to Schaefer, he is not representing a separate "client," and so the rule does not apply.

We have consistently held that a legal entity such as a corporation cannot appear except through counsel, and we have prohibited non-lawyer principals from representing these types of entities.[8] Based on our prior cases, a lawyer principal who appears on behalf of his corporation is clearly acting in his capacity as a lawyer representing a client, not as a principal of the corporation. We therefore conclude that SCR 182 applies in these situations. In addition, in light of our clear rulings on this issue, we reject Schaefer's argument that SCR 182 as applied to such situations is void for vagueness.

Finally, Schaefer contends that his contact with the Mirage Resorts officers and employees was permissible because he is a Mirage shareholder. According to Schaefer, SCR 182 only prohibits communication concerning the subject of the litigation. Schaefer thus argues that his letters to Mirage employees[9] and directors did not violate SCR 182 as they concerned shareholder matters.

SCR 182 bars only communication concerning the "subject of the representation." Thus, communications from Schaefer concerning matters of interest to Mirage shareholders unrelated to the pending litigation would not be barred by the rule. Here, however, while several letters in the record raise shareholder-type concerns, many do not. In addition, even those including shareholder concerns also discuss the pending litigation. Accordingly, Schaefer's conduct was within the scope of SCR 182.

### Constitutionality of SCR 182

Schaefer makes several constitutional arguments against enforcement of SCR 182. First, Schaefer argues that since the rule prohibits speech about a particular subject, *i.e.*, "the subject of the representation," it is a presumptively invalid content-based restriction that must withstand strict scrutiny to be constitutional.

---

[8]*Guerin v. Guerin,* 116 Nev. 210, 993 P.2d 1256; *Sunde v. Contel of California,* 112 Nev. 541, 915 P.2d 298 (1996); *Salman v. Newell,* 110 Nev. 1333, 885 P.2d 607 (1994).

[9]The particular employees here were unquestionably within the scope of SCR 182, as they were all management-level employees. *See Cronin v. District Court,* 105 Nev. 635, 781 P.2d 1150 (1989).

We note that Schaefer cites no authority in support of his argument, and so it need not be considered.[10] Moreover, the argument is clearly without merit. In *Gentile v. State Bar of Nevada,*[11] the United States Supreme Court held that a lawyer's speech in pending cases is subject to a greater degree of regulation than that of the press. In addition, the Supreme Court has pointed out that the term "content-based" generally refers to whether the speech is prohibited on the basis of viewpoint,[12] and that "laws that confer benefits or impose burdens on speech without reference to the ideas or views expressed are in most instances content neutral."[13] A regulation is not an invalid content-based restriction merely because one must review the speech's content in order to determine whether the regulation has been violated.[14] We thus conclude that SCR 182 is not a content-based restriction, but rather is content neutral.

As a content neutral restriction on speech, SCR 182 is constitutional if it is within the government's power, it furthers an important government interest unrelated to the suppression of free expression, and the incidental restriction on free expression is no greater than necessary.[15] We conclude that under this test, SCR 182 is constitutional. First, it is within this court's power to promulgate rules governing the legal profession, and so SCR 182 is within the government's power. Next, the rule furthers the important interests of protecting the attorney-client relationship from interference and protecting laypersons from overbearing by an opposing lawyer; this interest is unrelated to the suppression of free expression. Finally, the restriction on speech is no greater than necessary. A lawyer is not prohibited from all speech or contact; rather, the lawyer must obtain permission from opposing counsel, or must otherwise be authorized by law to make direct contact with a represented person regarding the subject of the representation.

Schaefer next argues that SCR 182, as applied to him when he was representing himself or Schaefer, Inc., is unconstitutionally vague, in that SCR 182 does not make clear what conduct is prohibited. Schaefer argues that the introductory phrase of the rule,

---

[10]*SIIS v. Buckley,* 100 Nev. 376, 382, 682 P.2d 1387, 1390 (1984).

[11]501 U.S. 1030, 1074 (1991).

[12]*Ward v. Rock Against Racism,* 491 U.S. 781, 791 (1989).

[13]*Turner Broadcasting System, Inc. v. FCC,* 512 U.S. 622, 643 (1994).

[14]*Hill v. Colorado,* 530 U.S. 703, 721 (2000).

[15]*United States v. O'Brien,* 391 U.S. 367, 377 (1968).

"[i]n representing a client," suggests that the lawyer and the client are not the same, and consequently, a self-represented lawyer is not subject to the rule. In support, he cites authority from California and Connecticut indicating that the rule does not apply to lawyers appearing pro se.[16] He also argues that Formal Opinion 8 is not binding, and moreover does not clearly state that lawyers appearing pro se are prohibited from contacting represented parties.

The state bar argues that, as Schaefer is a lawyer, he should be held to a greater understanding of the rules than a layperson unfamiliar with statutory interpretation. In support, the state bar cites Wisconsin authority holding that a rule requiring a lawyer to abstain from "an offensive personality" clearly established the prohibited conduct,[17] and a Ninth Circuit decision indicating that a rule requiring a lawyer to refrain from "conduct unbecoming a member of the bar" was sufficiently clear.[18] The state bar argues that Schaefer was on notice that his conduct was prohibited by Formal Opinion 8, and by Schaefer's 1981 public reprimand for similar conduct.

Schaefer is correct in noting that Formal Opinion 8 is nonbinding. But Schaefer's analysis of the opinion is flawed. The opinion clearly prohibits contact between a lawyer-party and opposing parties whom the lawyer knows are represented by counsel. The committee acknowledged that the rule could be subject to different interpretations, and noted the existence of conflicting authority. Nevertheless, the committee concluded that the better-reasoned position is that SCR 182 applies to lawyers appearing pro se.

As stated by the United States Supreme Court in 1926, a statute or rule is impermissibly vague if it "either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application."[19] This remains the test today.[20] It is well-settled that, in evaluating whether a statute is vague, judicial opinions construing the statute should be considered.[21] "[T]he touchstone is whether

---

[16]*Pinsky,* 578 A.2d at 1079; California Rule of Prof'l Conduct 2-100 cmt.

[17]*Matter of Beaver,* 510 N.W.2d 129, 133 (Wis. 1994).

[18]*United States v. Hearst,* 638 F.2d 1190, 1197 (9th Cir. 1980).

[19]*Connally v. General Constr. Co.,* 269 U.S. 385, 391 (1926).

[20]*United States v. Lanier,* 520 U.S. 259, 266 (1997).

[21]*Lanier,* 520 U.S. at 266-67; *Bouie v. City of Columbia,* 378 U.S. 347, 355, 362 (1964); *Winters v. New York,* 333 U.S. 507, 514-15 (1948) (noting that an individual is "chargeable with knowledge of the scope of subsequent interpretation" of a statute); *Minnesota v. Probate Court,* 309 U.S. 270, 273-

the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the . . . conduct was [prohibited]."[22] In addition, questions of vagueness must be more closely examined where First Amendment rights are implicated.[23]

We conclude that the non-binding nature of Formal Opinion 8, together with the existence of conflicting authority from other jurisdictions, renders SCR 182 vague as applied to Schaefer when he represented himself in the litigation at issue. In the absence of clear guidance from this court, Schaefer could have reasonably concluded that the rule did not apply in situations where he was self-represented. While a lawyer-party's insistence on contacting represented parties, even in the face of specific requests not to do so, could be viewed as unprofessional, SCR 182 arguably did not clearly prohibit the contact.

We are not persuaded otherwise by the state bar's cited authority. In *Matter of Beaver,* the Wisconsin court considered that the term "offensive personality" had been sufficiently defined by case law and by its incorporation into the ethical rules of the state.[24] Here, no binding case law from this court interpreting SCR 182 was available during the time period at issue. Additionally, the rule in California, where Schaefer is also admitted to practice, permits direct contact by a self-represented lawyer with a represented person.

In *United States v. Hearst,*[25] the Ninth Circuit referred Patricia Hearst's defense counsel, F. Lee Bailey and J. Albert Johnson, for investigation by disciplinary authorities based on their contract for a book about the case, which created at least a potential conflict of interest with their client. The court interpreted the term "conduct unbecoming a member of the bar" to incorporate the legal profession's "code of behavior"; in addition, the court relied on several other specific rules in determining that the lawyers' conduct should be investigated more fully in a disciplinary proceeding.[26] Here, no additional "code" or rules render SCR 182 any more clear with respect to a self-represented lawyer.

---

74 (1940); *Lanzetta v. New Jersey,* 306 U.S. 451, 456 (1939); *Hicklin v. Coney,* 290 U.S. 169, 172 (1933); *Bandini Co. v. Superior Court,* 284 U.S. 8, 17-18 (1931); *Fox v. Washington,* 236 U.S. 273, 277 (1915).

[22]*Lanier,* 520 U.S. at 267.

[23]*Ashton v. Kentucky,* 384 U.S. 195, 200 (1966); *see also Reno v. American Civil Liberties Union,* 521 U.S. 844, 870-72 (1997) (noting that even if a statute is not so vague as to violate due process, it may be impermissibly vague under the First Amendment if it chills protected speech). As discussed above, we conclude that SCR 182 does not violate the First Amendment.

[24]510 N.W.2d at 132-34.

[25]638 F.2d at 1193-95.

[26]*Id.* at 1197-99.

In addition, we decline to consider Schaefer's 1981 reprimand as providing notice concerning SCR 182. Schaefer was publicly reprimanded in part for violating SCR 190, which in 1981, provided as follows:

> A member of the state bar shall not in any way communicate upon the subject of controversy with a party represented by counsel . . . .

This version of the rule did not include the prefatory language of the current version of SCR 182, "[i]n representing a client," and clearly forbade a lawyer from contacting a represented party under all circumstances concerning the "subject of controversy." In contrast, the current version of SCR 182 arguably lends itself to some confusion when a lawyer is self-represented.

Accordingly, to the extent that the violations of SCR 182 found by the panel rely on instances in which Schaefer was representing himself, they may not be considered in determining the appropriate discipline to be imposed in this case. "[D]ue process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decisions has fairly disclosed to be within its scope."[27] While SCR 182 is not a criminal statute, nor is our construction precisely "novel" in light of Formal Opinion 8 and the decisions of several other jurisdictions, SCR 182 did not "fairly disclose" that direct contacts with represented parties while a lawyer is self-represented are forbidden. Nevada's lawyers are now on notice, however, that SCR 182 applies to them even when they are representing themselves. As discussed above, Schaefer's argument that the rule is vague as applied to situations where he represented Schaefer, Inc., is without merit.

Schaefer next argues that SCR 182 is unconstitutionally overbroad because unobjectionable contact such as settlement discussions are included within the rule's scope. He cites no relevant authority in support of his argument, and it therefore need not be considered.[28] In addition, we note that a settlement discussion between a lawyer-party and a represented party is precisely the type of contact that raises some of the major concerns addressed by the rule. The lay party is at a disadvantage, and may inadver-

---

[27]*Lanier,* 520 U.S. at 266; *see also Bouie,* 378 U.S. at 355, 362 (providing that judicial construction can cure vagueness, but not retroactively, particularly where the construction broadens the conduct covered by the statute).

[28]*Buckley,* 100 Nev. at 382, 682 P.2d at 1390.

tently disclose privileged information during the course of such discussions.

For an enactment to be overbroad on its face, it must reach a substantial amount of constitutionally protected conduct.[29] Here, the rule only proscribes contact concerning the subject matter of a pending case with respect to which the lawyer knows the party to be represented. This proscription protects the party from potentially domineering behavior and preserves the attorney-client relationship between the party and counsel. As discussed above, a lawyer's speech concerning a pending case is subject to greater regulation than other forms of speech.[30] Accordingly, the rule does not reach a substantial amount of constitutionally protected speech. As Schaefer has not articulated how the rule is overbroad as applied to him, and the rule is not overbroad on its face, we conclude that his argument is without merit.

Schaefer's final constitutional argument concerns his Sixth Amendment rights as a criminal defendant. He asserts that his contact with the Foxes was "authorized by law" because as a pro se defendant in the criminal case, he had a right to contact the witnesses in that case. He claims that he had this right even though a no-contact order had been entered, and even though Mr. Fox was a represented defendant in the civil conspiracy case.

Here, Schaefer's communication concerned the civil conspiracy case, not only the criminal case. Also, a no-contact order had been entered by the court, and Schaefer violated it. Finally, the substance of Schaefer's contact was an attempt to persuade the Foxes to change their testimony in the criminal case to favor Schaefer—an illegal communication.[31] Accordingly, Schaefer's argument is without merit.

*Propriety of continued hearing*

Schaefer challenges the denial of his request for a continuance of the second hearing date so that he could obtain counsel. Schaefer argues that he is entitled to a new hearing because the second hearing was reset for January 4, not later in the month. According to Schaefer, he was not able to find new counsel because no one wanted to work on his case over the holidays.

---

[29]*Hoffman Estates v. Flipside, Hoffman Estates,* 455 U.S. 489, 494 (1982).

[30]*Gentile,* 501 U.S. at 1074.

[31]NRS 199.240 (providing that offering compensation or reward to a witness to influence his testimony in an official proceeding is a category C felony).

We are not persuaded by Schaefer's argument. Schaefer stated on the record that he needed no more than one week's notice of the continued hearing, and was aware from November 17, 1999, that he needed to find counsel immediately. Additionally, he was notified no later than December 6, 1999, of the new hearing date. Even from December 6, Schaefer had four weeks to obtain new counsel and to prepare for the continued hearing. Schaefer has not demonstrated that this period was insufficient and that he is entitled to a new hearing.

*Adequacy of evidence supporting violations*

Although the recommendations of the disciplinary panel are persuasive, this court is not bound by the panel's findings and recommendation, and must examine the record anew and exercise independent judgment.[32] Ethical violations must be proven by clear and convincing evidence, which this court has described as evidence which " 'need not possess such a degree of force as to be irresistible, but there must be evidence of tangible facts from which a legitimate inference . . . may be drawn.' "[33]

In connection with the order Schaefer prepared in the injunction case, the panel found that Schaefer violated SCR 173(3) (fairness to opposing party and counsel: disobeying obligation to tribunal) and SCR 203(4) (conduct prejudicial to the administration of justice). The record demonstrates that Schaefer deliberately included an award of costs to Schaefer, Inc., in the order he prepared when the district court had not awarded any costs. He subsequently refused to stipulate to a modification of the order, thus forcing opposing counsel to file a motion to amend. We conclude that the violation of SCR 173(3) is supported by clear and convincing evidence. We disregard the violation of SCR 203(4), as no such violation was charged for this conduct in the complaint.[34]

With respect to Schaefer's visit to the Foxes, the panel found that Schaefer had violated SCR 173(6) (fairness to opposing party

---

[32]*In re Kenick,* 100 Nev. 273, 680 P.2d 972 (1984).

[33]*In re Stuhff,* 108 Nev. 629, 635, 837 P.2d 853, 856 (1992) (quoting *Gruber v. Baker,* 20 Nev. 453, 477, 23 P. 858, 865 (1890)).

[34]*Burgess v. Storey County,* 116 Nev. 121, 992 P.2d 856 (2000) (holding that due process requires that party be notified of charges against him); *State Bar of Nevada v. Claiborne,* 104 Nev. 115, 756 P.2d 464 (1988) (noting that due process requirements must be met in bar proceedings).

and counsel: request that witness refrain from providing information), SCR 182 (communication with represented person), SCR 203(2) (criminal act adversely reflecting on fitness to practice), and SCR 203(4) (conduct prejudicial to the administration of justice). We conclude that clear and convincing evidence supports the panel's finding that by offering to dismiss Mr. Fox from the conspiracy case in exchange for favorable testimony in the criminal case, Schaefer violated SCR 173(6).

The panel did not make any findings to support its determination that Schaefer violated SCR 203(2), and the basis for the finding is not clear from the record. Also, the complaint did not include a charge that Schaefer violated this rule, but rather SCR 203(3). In addition, the complaint did not charge violations of SCR 182 or SCR 203(4) for this conduct. Accordingly, we conclude that these violations may not be considered.[35]

Concerning the global settlement, the panel found that Schaefer violated SCR 182 (communication with represented party). The record demonstrates that Schaefer repeatedly contacted the Association president directly concerning the settlement, despite a specific request that all contact be through counsel. The violation of SCR 182 is thus supported by clear and convincing evidence. As Schaefer was representing Schaefer, Inc., in this matter, the violation may be considered in determining an appropriate sanction.

In the receivership case, the panel found that Schaefer violated SCR 170 (meritorious claims), SCR 182 (communication with represented party), SCR 203(1) (violation of the rules of professional conduct), SCR 203(3) (misconduct involving dishonesty, deceit, fraud or misrepresentation), and SCR 203(4) (conduct prejudicial to administration of justice). The record reflects that Schaefer included the Thaler Trust as a party-plaintiff when the trustee had not authorized him to do so, and at a time when he knew the trustee was out of the country for several months and would not discover his actions. The record also reflects that the complaint was frivolous, and that the district court imposed sanctions of $5,000, which Schaefer persistently refused to pay. We conclude that the violations of SCR 170 and SCR 203(3) are supported by clear and convincing evidence. As the complaint did not

---

[35]*Id.; see also Robison v. Robison,* 100 Nev. 668, 691 P.2d 451 (1984) (noting that a tribunal's findings must include a sufficient factual basis for its ultimate conclusions).

charge violations of SCR 182, SCR 203(1) or SCR 203(4) based on this conduct, these violations will not be considered.[36]

With respect to the Mirage cases, the panel found that Schaefer violated SCR 182 by directly contacting officers, directors and employees of the Mirage, even after specifically requested by Mirage Resorts' general counsel to refrain from such contact. The record contains clear and convincing evidence of these contacts. But since Schaefer was representing himself in these cases, we do not consider this violation in determining the appropriate discipline to be imposed.

In the Texas case, the panel found that Schaefer violated SCR 172 (candor toward the tribunal), SCR 203(3) (misconduct involving dishonesty, deceit, fraud or misrepresentation), and SCR 203(4) (conduct prejudicial to the administration of justice) by submitting a false affidavit in support of his application for admission pro hac vice. SCR 99 provides that this court has disciplinary jurisdiction over attorneys admitted in this state. Moreover, SCR 203.5 specifically provides that this court has jurisdiction over a lawyer licensed in Nevada even if practicing elsewhere. Thus, Schaefer's conduct in Texas is subject to discipline in Nevada. We conclude that by claiming he had not been subject to discipline within the pertinent time period, when in fact he had, Schaefer violated SCR 172 and SCR 203(3). We disregard the panel's finding that Schaefer violated SCR 203(4), as no such violation was charged in the complaint.[37]

*Propriety of recommended discipline*

The panel found one violation of SCR 170 (meritorious claims), one violation of SCR 172 (candor toward the tribunal), one violation of SCR 173(3) (fairness to opposing party and counsel: disobeying obligation to tribunal), one violation of SCR 173(6) (fairness to opposing party and counsel: request that witness refrain from providing information), four violations of SCR 182 (communication with represented party), one violation of SCR 203(1) (violation of the rules of professional conduct), one violation of SCR 203(2) (criminal act adversely reflecting on lawyer's fitness), two violations of SCR 203(3) (misconduct involving dishonesty, deceit, fraud or misrepresentation), and five violations of SCR 203(4) (conduct prejudicial to administration of justice). As discussed above, we do not consider one of the SCR

---

[36]*Burgess,* 116 Nev. at 124-25, 992 P.2d at 858; *Claiborne,* 104 Nev. at 216-17, 756 P.2d at 530.

[37]*Burgess,* 116 Nev. at 124-25, 992 P.2d at 858; *Claiborne,* 104 Nev. at 216-17, 756 P.2d at 530.

182 violations, since Schaefer was representing himself in that instance. We also disregard two of the SCR 182 violations, the SCR 203(1) violation, the SCR 203(2) violation and four of the SCR 203(4) violations, as no such violations were charged in the complaint based upon the particular conduct relied upon by the panel.

The panel also found that the aggravating factors of a pattern of misconduct, multiple offenses, and Schaefer's refusal to acknowledge the wrongfulness of his actions had been shown by clear and convincing evidence. We conclude that the record supports the panel's finding of aggravating factors. Multiple offenses have been shown, as has a pattern of misconduct. In addition, Schaefer steadfastly maintains that all of his conduct was permissible, and fails to acknowledge in any way that his conduct was wrongful.

Schaefer's discipline history is of relevance in determining the appropriate sanction to be imposed, and it includes two public reprimands and a suspension. The first public reprimand was by this court in 1981 for taking a default without notice to opposing counsel even though counsel had appeared in the action, and for engaging in settlement discussions with a represented party without counsel's consent. Schaefer also received a public reprimand from this court in 1995, as reciprocal discipline based on a 1993 California order including numerous probationary conditions, for (1) willfully failing to maintain the respect due the courts by disobeying a United States District Court order of October 13, 1993; (2) making a threatening statement to opposing counsel; and (3) failing to safeguard a client's files after the termination of his representation. In 1998, Schaefer received a one-year stayed suspension from this court, with 30 days actually served, as reciprocal discipline for a 1997 California order, based on Schaefer's failure to comply with the probationary conditions imposed by the California court's 1993 disciplinary order.

## CONCLUSION

We conclude that disbarment is warranted. The record reflects a blatant disregard by Schaefer for the rights of others and the administration of justice. This pattern is demonstrated by Schaefer's actions in naming the Thaler Trust as a party without authorization, his attempt to influence a witness's testimony, his self-serving award of costs without court order, and his false affidavit to the Texas court. Schaefer's persistent refusal to recognize that any of his actions were improper indicates that his behavior is not likely to improve in the future. Under these circumstances, disbarment is the only sanction that will adequately serve the pur-

poses of attorney discipline: to protect the public and the integrity of the bar.[38]

Accordingly, John Michael Schaefer is disbarred. Schaefer shall pay the costs of the disciplinary proceeding within thirty (30) days, and Schaefer and the state bar shall comply with SCR 115.

---

[38]*Claiborne,* 104 Nev. at 219, 756 P.2d at 531.