RICK SOWERS, AN INDIVIDUAL, APPELLANT, v. FOREST HILLS SUBDIVISION; ANN HALL AND KARL HALL, INDIVIDU-ALLY, RESPONDENTS.

No. 58609

February 14, 2013                                      294 P.3d 427

[Rehearing denied April 15, 2013]
[En banc reconsideration denied June 20, 2013]

*Fahrendorf, Viloria, Oliphant & Oster, LLP*, and *Patrick R. Millsap*, Reno, for Appellant.

*Karl S. Hall*, Reno; *Bowen Hall* and *Ann O. Hall*, Reno, for Respondents.

Before PICKERING, C.J., HARDESTY and SAITTA, JJ.

## OPINION

By the Court, HARDESTY, J.:

In this appeal, we address whether the district court properly concluded that, under the particular circumstances and surroundings of the case, a proposed residential wind turbine would constitute a nuisance warranting a permanent injunction against its construction. Below, respondents Forest Hills Subdivision, Ann Hall, and Karl Hall (collectively, the Halls) sought to permanently enjoin their neighbor, appellant Rick Sowers, from constructing a wind turbine on his residential property, asserting that the proposed turbine would constitute a nuisance.[1] The district court agreed and granted the permanent injunction.

We conclude that, in this case, substantial evidence exists to support the district court's conclusion that the proposed wind turbine constitutes a nuisance. We also determine that the wind turbine at issue would create a nuisance in fact. In reaching our conclusion, we hold that the aesthetics of a wind turbine alone are not grounds for finding a nuisance. However, we conclude that a nuisance in fact may be found when the aesthetics are combined with other factors, such as noise, shadow flicker, and diminution in property value. In this case, the district court heard testimony about the aesthetics of the proposed wind turbine, the noise and shadow flicker

---

[1]Though respondents and the district court refer to the wind turbine generally as "a nuisance," there are different types of legally defined nuisances. As addressed in detail below, this particular proposed wind turbine constitutes a nuisance in fact.

it would create, and its potential to diminish surrounding property values. Based on this evidence, we conclude that substantial evidence supports the district court's finding that the proposed residential wind turbine would be a nuisance in fact. Thus, we affirm the order granting a permanent injunction prohibiting its construction.

## FACTS AND PROCEDURAL HISTORY

Sowers informed residents of the Forest Hills Subdivision that he planned to construct a wind turbine on his residential property. After this announcement, Sowers' neighbors, the Halls, and the Forest Hills Subdivision filed a complaint in district court claiming that the proposed wind turbine posed a potential nuisance because it would generate constant noise and obstruct the views of neighboring properties.[2] The Halls sought to permanently enjoin construction of the wind turbine and requested preliminary injunctive relief.

At the preliminary injunction hearing, the district court heard testimony that the subdivision was a very quiet area, and that the turbine would obstruct Mr. Hall's view and create noise and shadow flicker.[3] Another resident, who was also a licensed realtor, testified that the proposed wind turbine would diminish property values in the neighborhood. A renewable energy specialist testified that the proposed wind turbine would likely generate the same level of noise as "the hum of a highway," and a contractor hired to construct the turbine testified that there was no way to mitigate the shadow flicker caused by the wind turbine.

The district court then conducted a site visit to the location of a comparable wind turbine. At this site visit, Sowers brought a decibel-reading machine that indicated that the noise from the wind turbine did not exceed 5 decibels from 100 feet away. A neighbor to that wind turbine testified that it produced some noise and shadow flicker, but that the turbine did not bother him. The district court also visited Sowers' home in Forest Hills, the proposed site for his wind turbine, but noted there was no way for Sowers to test the possible decibel level at that location.

---

[2]The Halls also claimed that the proposed wind turbine violated the CC&Rs of the Forest Hills Subdivision. We agree with the district court that the CC&R subsections attempting to limit wind turbines in the community violate NRS 278.02077. Thus, further analysis into the breach of contract claims associated with the CC&Rs is not needed.

[3]"Shadow flicker" refers to the alternating pattern of light and dark shadows occurring when the blades of a wind turbine rotate in the line of sight of the sun. These shadows often create a flickering or strobe effect. *See Burch v. Nedpower Mount Storm, LLC,* 647 S.E.2d 879, 891 (W. Va. 2007); *Residents Opposed Turbines v. State EFSEC,* 197 P.3d 1153, 1160 n.4 (Wash. 2008).

Following the preliminary injunction hearing, the district court granted the permanent injunction.[4] The district court heavily considered its visit to the site of the comparable turbine and its observation that it "was astonished by the size of the structure and the 'overwhelming impression of gigantism.'" The district court also considered that the Forest Hills Subdivision had panoramic views and was a very quiet neighborhood, and that the proposed wind turbine would likely lower property values in the area. Based on these findings and the site visits, the district court held that the proposed wind turbine constituted a nuisance because the turbine would substantially interfere with the neighboring residents' enjoyment and use of their property. As such, the district court ordered a permanent injunction enjoining construction of the wind turbine. Sowers now appeals.

## DISCUSSION

On appeal, Sowers argues that the district court improperly concluded that the proposed wind turbine constituted a nuisance and improperly granted the permanent injunction. We disagree.

A nuisance is "[a]nything which is injurious to health, or indecent and offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property." NRS 40.140(1)(a). There are several kinds of nuisances, two of which are pertinent to this discussion. A nuisance at law, also called a nuisance per se, is "a nuisance at all times and under any circumstances, regardless of location or surroundings." *See* 66 C.J.S. *Nuisances* § 4 (2013). A nuisance in fact, also called a nuisance per accidens, is "one which becomes a nuisance by reasons of circumstances and surroundings." *Id.*

We recognize that the Washoe County Development Code permits the construction of private wind turbines in residential areas if such turbines otherwise comply with the requirements of the Code. *See generally* Washoe County Code Ch. 326 (2010). We are also cognizant of this state's aggressive policy favoring renewable energy sources, such as wind turbines. *See* NRS 278.02077. We further acknowledge the testimony from the neighbor of the person owning the comparable wind turbine who said that the turbine did not bother him. Based on these considerations, we do not believe

---

[4]At the preliminary injunction hearing, the parties stipulated to advance the hearing into a trial on the merits of the Halls' claim for a permanent injunction pursuant to NRCP 65(a)(2).

that wind turbines are severe interferences in all circumstances, and thus wind turbines are not nuisances at law.

However, even when a structure or act is not a nuisance per se, "[a] nuisance may arise from a lawful activity conducted in an unreasonable and improper manner." 66 C.J.S. *Nuisances* § 16 (2012) (footnote omitted). Thus, a wind turbine may "be or become a nuisance by reason of the improper or negligent manner in which it is conducted, or by reason of its locality, as where it is done or conducted in a place where it necessarily tends to the damage of another's property." *Id.* Accordingly, "a fair test as to whether a business or a particular use of a property in connection with the operation of the business constitutes a nuisance[ ] is the reasonableness or unreasonableness of the operation or use in relation to the particular locality and under all existing circumstances." *Burch v. Nedpower Mount Storm, LLC*, 647 S.E.2d 879, 893 (W. Va. 2007) (internal quotations omitted).

"When deciding whether one's use of his or her property is a nuisance to his neighbors, it is necessary to balance the competing interests of the landowners, using a commonsense approach." 66 C.J.S. *Nuisances* § 13 (2012). Although we recognize that preserving a residential neighborhood's character is an important and substantial interest for subdivision homeowners, *see Zupancic v. Sierra Vista Recreation*, 97 Nev. 187, 194, 625 P.2d 1177, 1181 (1981), we have consistently held that a landowner does not have a right to light, air, or view. *See Probasco v. City of Reno*, 85 Nev. 563, 565, 459 P.2d 772, 774 (1969); *Boyd v. McDonald*, 81 Nev. 642, 651, 408 P.2d 717, 722 (1965). Thus, in resolving this issue on appeal, we must determine whether the proposed wind turbine is "so unreasonable and substantial as to amount to a nuisance and warrant an injunction" by balancing "the gravity of the harm to the plaintiff against the utility of the defendant's conduct, both to himself and to the community." *Cook v. Sullivan*, 829 A.2d 1059, 1066 (N.H. 2003) (internal quotations omitted).

*Substantial evidence supports the district court's conclusion that the proposed wind turbine is a nuisance in fact*

The determination of whether an activity constitutes a nuisance is generally a question of fact. *Jezowski v. City of Reno*, 71 Nev. 233, 239, 286 P.2d 257, 260 (1955). This court will uphold the factual findings of the district court as long as these findings are not clearly erroneous and are supported by substantial evidence.

*Kockos v. Bank of Nevada*, 90 Nev. 140, 143, 520 P.2d 1359, 1361 (1974).

To sustain a claim for private nuisance, an interference with one's use and enjoyment of land must be both substantial and unreasonable. *Lied v. County of Clark*, 94 Nev. 275, 278, 579 P.2d 171, 173 (1978). Interference is substantial " '[i]f normal persons living in the community would regard the [alleged nuisance] as definitively offensive, seriously annoying or intolerable.' " *Rattigan v. Wile*, 841 N.E.2d 680, 688 (Mass. 2006) (quoting Restatement (Second) of Torts § 821F cmt. d (1979)). Interference is unreasonable when "the gravity of the harm outweighs the social value of the activity alleged to cause the harm." *Burch*, 647 S.E.2d at 887 (internal quotations omitted).

In the small body of national caselaw regarding wind turbines, noise and diminution of property values are the most universally considered factors in determining whether a private nuisance exists. Some states also consider the presence of shadow flicker in combination with noise and property value reduction.[5]

### Noise

In a case with similar facts from another jurisdiction, the Superior Court of New Jersey held that a residential wind turbine located in a quiet neighborhood constituted a nuisance solely on the basis of the constant loud noise that the turbine generated. *Rose v. Chaikin*, 453 A.2d 1378, 1381-82 (N.J. Super. Ct. Ch. Div. 1982). In *Rose*, the Superior Court found that the distinctive sound of the wind turbine produced a heightened level of intrusiveness

---

[5]We have not previously addressed whether the aesthetics of a wind turbine is a proper consideration in determining the existence of a nuisance. We adopt the view of several jurisdictions that hold aesthetics alone cannot form the basis of a private nuisance claim. *See Wernke v. Halas*, 600 N.E.2d 117, 121-22 (Ind. Ct. App. 1992); *Oliver v. AT&T Wireless Services*, 90 Cal. Rptr. 2d 491, 500 (Ct. App. 1999); *Ness v. Albert*, 665 S.W.2d 1, 1-2 (Mo. Ct. App. 1983). The reason for this general rule, with which we agree, is that "[a]esthetic considerations are fraught with subjectivity." *Ness*, 665 S.W.2d at 2. But we also adopt *Burch v. Nedpower*'s holding that aesthetics-based complaints can be one of several factors to consider, because we agree with the rationale of that court when it stated: " 'Unsightly things are not to be banned solely on that account. Many of them are necessary in carrying on the proper activities of organized society. But such things should be properly placed, and not so located as to be unduly offensive to neighbors or to the public.' " 647 S.E.2d at 891 (quoting *Parkersburg Builders Material Co. v. Barrack*, 191 S.E. 368, 371 (W. Va. 1937)). Thus, while Sowers is correct that the large proportions of the turbine alone cannot form the basis of a nuisance finding, the district court may properly consider the enormity of the object as one factor in its decision.

because the neighborhood was quiet, separated from commercial and heavier residential noise, and the residents had specifically chosen to live in the area due to the peacefulness the community afforded. *Id.* We conclude that the citizens who were protected in *Rose* are analogous to the Halls and other Forest Hills residents, as the district court heard testimony of several persons living in the Forest Hills Subdivision that the subdivision was very quiet, and they were concerned that the level of noise from the wind turbine would change the character of the neighborhood they had sought to live in. Since a renewable energy expert testified that the noise created by the turbine would be similar to that of the hum on a nearby highway, there is some evidence that the quiet would most likely be gone. Based on this evidence, the district court could have determined that the proposed wind turbine constitutes a nuisance as a source of excessive noise.

### Diminution to property value

*Burch* also allows for the consideration of potentially diminished property values where it is shown that a landowner's use and enjoyment of his or her property may be infringed. 647 S.E.2d at 892. Since the district court received testimony from subdivision residents that they feared an impact on the use and enjoyment of their property, it was fair for the district court to also take into account potential harm to property values. Thus, it was acceptable to include in its findings and conclusions the opinion of the real estate agent who testified that properties in proximity to wind turbines decreased in value.[6]

### Aesthetics and shadow flicker

As noted in footnote 5, a district court may consider the aesthetics of the wind turbine only if factors other than unsightliness or obstruction of views are claimed. In *Burch*, the West Virginia court noted that shadow flicker was a kind of aesthetic concern that could be considered in conjunction with other factors. *Id.* at 898. It further anticipated how a commercial wind turbine facility abutting a neighborhood could constitute a private nuisance where constant shadow flicker was likely to ruin the enjoyment of residents. Here, Karl Hall testified that the wind turbine would create a shadow flicker on his property, and the contractor hired to con-

---

[6]While Sowers objected to the real estate agent's qualifications as an expert, he does not raise that issue on appeal. *See Attorney General v. Montero*, 124 Nev. 573, 577 n.9, 188 P.3d 47, 49 n.9 (2008) (an issue raised by the appellant for the first time in the appellant's reply brief need not be considered on appeal).

struct the wind turbine testified that there is no way to mitigate shadow flicker. Thus, it was not clearly erroneous for the district court to consider shadow flicker.

Nor was it error for the district court to consider the size of the proposed wind turbine. Evidence was heard from a representative of the company who was supposed to construct the turbine indicating that the height of the proposed turbine exceeded 75 feet. The district court got to experience just how tall 75 feet is during its site visit to a comparable wind turbine. With this perspective, the site visit to Sowers' property revealed that his proposed turbine would be a significant imposition on the Halls' ability to use their property, as their land, which lays lower than Sowers' land, would now have a sizeable obstacle overshadowing it. Since evidence of other factors was presented, it was proper for the district court to add into its consideration the presence of shadow flicker and the size of the turbine and the impact on views.

As such, we conclude that this evidence concerning the noise, diminution in property value, shadow flicker, and aesthetics far outweighs any potential utility of the proposed wind turbine within the Forest Hills Subdivision.[7] Accordingly, we conclude that the proposed wind turbine constitutes a nuisance in fact.

*The district court properly granted the injunction*

A district court may grant a permanent injunction to abate a nuisance. NRS 40.140(1). Typically, we review the district court's decision to grant a permanent injunction for an abuse of discretion. *Commission on Ethics v. Hardy*, 125 Nev. 285, 291, 212 P.3d 1098, 1103 (2009). Purely legal questions surrounding the issuance of an injunction, however, are reviewed de novo. *Secretary of State v. Give Nevada A Raise*, 120 Nev. 481, 486 n.8, 96 P.3d 732, 735 n.8 (2004).

Sowers argues that the injunction is void because it does not specifically state the reasons for its issuance as required by NRCP 65(d).[8] Specifically, Sowers complains that the district court judg-

---

[7]We recognize that the utility of the wind turbine is the fact that it is an alternative energy source, which Nevada's public policy favors. *See* NRS 278.02077. However, an NV Energy representative informed the court that only Sowers would benefit from this alternative energy source since any energy credit for the turbine's use would only be extended to Sowers' property, and not to the other subdivision residents. Thus, we conclude that the wind turbine's utility within the community is far outweighed by its potential harm to the Forest Hills Subdivision residents.

[8]In addition, Sowers argues that the injunction should not have been granted pursuant to NRS 33.010(1) and (2) because the Halls' complaint merely alleged that the proposed wind turbine will cause inconvenience, annoyance, and

ment only discussed the aesthetics of the proposed wind turbine, and thus, any other factors considered by the district court are not apparent on the face of the judgment.

Pursuant to NRCP 65(d), "[e]very order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; [and] shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained . . . ." However, "the lack of a statement of reasons does not necessarily invalidate a permanent injunction, so long as the reasons for the injunction are readily apparent elsewhere in the record and are sufficiently clear to permit meaningful appellate review." *Las Vegas Novelty v. Fernandez*, 106 Nev. 113, 118, 787 P.2d 772, 775 (1990).

While the district court expressed concern with the size of the proposed wind turbine, a review of the record reveals it did consider the anticipated noise level of the proposed wind turbine, the actual noise level of an existing wind turbine, the quietness of the Forest Hills Subdivision community, the effects of shadow flicker, and the diminution in value of surrounding properties that the wind turbine would cause. Since each of these findings is supported by evidence in the record, we conclude that the reasons for the injunction are readily apparent in the record and are sufficiently clear to permit meaningful appellate review.

Accordingly, we affirm the district court's order granting a permanent injunction.

PICKERING, C.J., and SAITTA, J., concur.

---

hardship, and did not specifically address how the plaintiffs would prevail on their claims or how Sowers' turbine would produce irreparable and great injury. However, Nevada is a notice-pleading jurisdiction where courts liberally construe pleadings so long as claims are fairly noticed to the adverse party. *Hay v. Hay*, 100 Nev. 196, 198, 678 P.2d 672, 674 (1984). In addition, the permanent injunction was based on more than the Halls' complaint. The district court reached its decision based on the evidence presented by both parties. Thus, because the district court's decision was based on the evidence and the district court retains the authority to grant any appropriate relief, *see* NRCP 54(c), Sowers' argument lacks merit.