# IN THE SUPREME COURT OF THE STATE OF NEVADA

IN THE MATTER OF DISCIPLINE OF
AMY M. GAMAGE, BAR NO. 9304.

No. 78079

**FILED**

JUN 21 2019

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

## ORDER OF SUSPENSION

This is an automatic review of a Southern Nevada Disciplinary Board hearing panel's recommendation that attorney Amy M. Gamage be suspended from the practice of law for four years from the date of her temporary suspension on May 11, 2018, based on violations of RPC 1.15 (safekeeping property) and RPC 8.4(c) (misconduct). Because no briefs have been filed, this matter stands submitted for decision based on the record. SCR 105(3)(b).

We employ a deferential standard of review with respect to the hearing panel's findings of fact, SCR 105(3)(b), and thus, will not set them aside unless they are clearly erroneous or not supported by substantial evidence, *see generally Sowers v. Forest Hill Subdivision*, 129 Nev. 99, 105, 294 P.3d 427, 432 (2013); *Ogawa v. Ogawa*, 125 Nev. 660, 668, 221 P.3d 699, 704 (2009). In contrast, we review de novo a disciplinary panel's conclusions of law and recommended discipline. SCR 105(3)(b).

The State Bar has the burden of showing by clear and convincing evidence that Gamage committed the violations charged. *In re Discipline of Drakulich*, 111 Nev. 1556, 1566, 908 P.2d 709, 715 (1995). We defer to the panel's findings of fact in this matter as they are supported by

19-26810

substantial evidence and are not clearly erroneous. Based on those findings, we agree with the panel's conclusions that the State Bar established by clear and convincing evidence that Gamage violated the above-listed rules by misappropriating more than $500,000 in client funds with her law partner.

In determining whether the panel's recommended discipline is appropriate, we weigh four factors: "the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors." *In re Discipline of Lerner*, 124 Nev. 1232, 1246, 197 P.3d 1067, 1077 (2008). We must ensure that the discipline is sufficient to protect the public, the courts, and the legal profession. *See State Bar of Nev. v. Claiborne*, 104 Nev. 114, 213, 756 P.2d 464, 527-28 (1988) (noting the purpose of attorney discipline).

Gamage violated duties owed to her clients (safekeeping property) and to the legal profession (misconduct and misappropriation of funds). Because Gamage discovered funds missing from the trust account and then continued to misappropriate client funds to pay personal and business expenses, Gamage intentionally violated her ethical duties. Gamage's misconduct caused injury to her clients as they did not receive their funds or their lienholders were not paid. Based on the most serious instance of misconduct at issue, Standards for Imposing Lawyer Sanctions, *Compendium of Professional Responsibility Rules and Standards* 452 (Am. Bar Ass'n 2017) ("The ultimate sanction imposed should at least be consistent with the sanction for the most serious instance of misconduct among a number of violations."), the baseline sanction before considering

 

aggravating and mitigating circumstances is disbarment. *See id.* Standard 4.11 ("Disbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client."). The record supports the panel's findings of five aggravating circumstances (dishonest or selfish motive, pattern of misconduct, multiple offenses, vulnerability of the victims, and substantial experience in the practice of law) and three mitigating circumstances (absence of prior disciplinary record, personal and emotional problems, and remorse). Considering all of the factors, including the mitigating circumstance of Gamage's mental health, we agree with the panel that a downward deviation from the baseline sanction of disbarment is appropriate and that a lengthy suspension along with conditions for reinstatement is sufficient to serve the purpose of attorney discipline. We do not believe, however, that a four-year suspension is sufficient.

Accordingly, we hereby suspend attorney Amy M. Gamage from the practice of law in Nevada for five years and one day from the date of her temporary suspension, May 11, 2018. Gamage is jointly and severally responsible with her law partner for the payment of restitution to clients and lienholders as set forth in the State Bar's restitution chart. Such restitution sums may be reduced upon receipt of sufficient documentation demonstrating reasonable fees and costs and negotiations with lien holders. Funds paid to clients through the State Bar Client Security Fund shall be reimbursed to the fund. Restitution must be paid in full before Gamage seeks reinstatement. Gamage shall also pay the costs of the disciplinary



proceedings, including $2,500 under SCR 120, within 30 days from the date of this order. The State Bar shall comply with SCR 121.1.

It is so ORDERED.

_____, C.J.
Gibbons

_____, J.
Pickering

_____, J.
Parraguirre

_____, J.
Stiglich

_____, J.
Cadish

HARDESTY, J., with whom SILVER, J., agrees, dissenting:

Disbarment is the presumptive discipline in this matter based on Gamage's violation of RPC 1.15. Standards for Imposing Lawyer Sanctions, *Compendium of Professional Responsibility Rules and Standards*, Standard 4.11 (Am. Bar Ass'n 2017) [hereinafter *ABA Standards*]. The majority acknowledges as much but then agrees with the hearing panel that a lengthy suspension is sufficient to serve the purpose of attorney discipline, considering the mitigating circumstances. I

SUPREME COURT
OF
NEVADA

(O) 1947A

respectfully dissent because none of the relevant factors overcome the presumption of disbarment in this case.

The misconduct at issue is egregious, particularly the conversion of client funds entrusted to Gamage. As the Indiana Supreme Court has observed, "Few other acts of misconduct impugn the integrity of the Bar or place the public more at risk than the misuse of client funds." *Matter of Frosch*, 643 N.E.2d 902, 904 (Ind. 1994). That observation is particularly apt in this case considering the hearing panel's findings as to Gamage's intent and the injury to her clients, all of which are supported by the record. The hearing panel found that Gamage acted with intent when she converted clients' personal injury settlement funds to her own use, meaning that she acted with a "conscious objective or purpose to accomplish a particular result." *Id.* at 452. This is "the most culpable mental state" under the ABA standards. *Annotated Standards for Imposing Lawyer Sanctions* § 3.0 (Am. Bar Ass'n 2015) [hereinafter *Annotated Standards*]. Specifically, Gamage discovered that as much as $375,000 in client funds was missing from the trust account in March 2017, and instead of self-reporting her misconduct to the State Bar and seeking assistance, she continued to take client funds from the trust account to cover business expenses and to pay herself a salary. In fact, at the hearing, Gamage appeared to struggle to understand the ethical issues with taking client funds to cover operating expenses, as she indicated that while she was taking client funds to pay her mortgage, she believed that money was going back into the clients' cases because at the time she was operating the law firm out of her home. The hearing panel found that Gamage's intentional conversion of client funds caused actual harm to her clients, which the panel

appropriately described as "extreme" given that many of the clients received none of their settlement funds and faced collections over unpaid liens that could negatively impact their credit ratings and expose them to legal action.

The five aggravating factors found by the hearing panel and supported by the record support the presumptive discipline in this case. Three of those factors are particularly significant. First, Gamage acted with a dishonest or selfish motive, converting hundreds of thousands of dollars in client funds entrusted to her for her own purposes. Although she suggested that most of the missing client funds were the result of her ex-husband and law partner's bad accounting practices, the record shows that she converted client funds entrusted to her to pay personal expenses at places like clothing stores and salons. Additionally, when checks began to bounce, she would withdraw funds at casino ATMs to continue supporting her lifestyle. And two other aggravating factors demonstrate that Gamage's violations of the professional conduct rules were not an isolated lapse in judgment or oversight. In particular, she engaged in a pattern of misconduct and committed multiple offenses by converting numerous clients' funds over a period of years.

Mitigating factors can militate against disbarment. SCR 102.5(2); *ABA Standards, supra* at 451. When both aggravating and mitigating factors are present, we must weigh them against each other to determine whether the mitigating factors support discipline less than the presumptive discipline. *Annotated Standards, supra* § 9.1. After engaging in that weighing process, this court has imposed discipline less than disbarment in cases implicating Standard 4.11 when there are substantial mitigating factors; typically, when a severe mental disability or chemical

 

dependency that caused the misconduct has been corrected and the attorney has made full restitution or significant strides toward full restitution. *See, e.g., In re Disciple of Harris*, Docket No. 57507 (Order of Suspension, Feb. 24, 2012) (imposing suspension rather than disbarment for misappropriation of approximately $788,000 from client trust accounts where attorney self-reported misconduct, repaid all money to the client trust accounts with interest before the disciplinary hearing, no longer had access to the firm's business and trust accounts, allowed another attorney to supervise his performance, and had successfully completed treatment for alcoholism and other mental disorders that had caused his misconduct). Considering the mitigating factors found by the panel in this case and weighing them against the aggravating factors and the repeated and egregious misconduct, I am not convinced that this is a case where the court should deviate from the presumptive discipline of disbarment.

The hearing panel only recognized three mitigating factors. While Gamage experienced personal and emotional problems, it appears that those problems did not manifest, or at least she did not seek treatment for them, until around the time it became clear that a significant amount of client funds were missing. Further, while the hearing panel found that Gamage showed remorse for her misconduct, when she initially discovered missing client funds, she continued to withdraw client funds to support her lifestyle. Thus, the limited mitigating factors found by the hearing panel do not in my opinion mitigate the repeated and egregious professional

misconduct spanning several years. Accordingly, I would disbar attorney Amy Gamage from the practice of law in Nevada. I therefore dissent.

_____, J.
Hardesty

I concur:

_____, J.
Silver

cc:    Chair, Southern Nevada Disciplinary Board
       Amy M. Gamage
       Bar Counsel, State Bar of Nevada
       Executive Director, State Bar of Nevada
       Perry Thompson, Admissions Office, U.S. Supreme Court