135 Nev., Advance Opinion 43

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| IN THE MATTER OF DISCIPLINE OF JAMES A. COLIN, BAR NO. 6257. | No. 73031 |

**FILED**

SEP 1 9 2019

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

Automatic review of a disciplinary board hearing panel's recommendation for attorney discipline.

*Attorney suspended.*

James A. Colin, Las Vegas,
in Pro Se.

Daniel M. Hooge, Bar Counsel, and Phillip J. Pattee and Bri F. Corrigan, Assistant Bar Counsel, Las Vegas,
for State Bar of Nevada.

BEFORE THE COURT EN BANC.[1]

_____

[1]Chief Justice Mark Gibbons and Justices Kristina Pickering, James W. Hardesty, and Ron D. Parraguirre voluntarily recused themselves from participation in the decision of this matter. Before their retirements, Justices Michael L. Douglas and Michael A. Cherry also voluntarily recused themselves. The Governor then appointed district court judges David A. Hardy, Nathan Tod Young, Scott Freeman, Kimberly A. Wanker, Robert W. Lane, and John Schlegelmilch to sit in place of the six recused justices. Justices Elissa F. Cadish and Abbi Silver therefore did not participate in the decision of this matter.

 

19-39056

*OPINION*

By the Court, STIGLICH, J.:

The Rules of Professional Conduct (RPC) establish ethical guidelines for lawyers, some of which are mandatory and therefore define proper conduct for purposes of professional discipline. We consider in this matter whether to discipline attorney James A. Colin for violating rules that direct lawyers not to engage in conduct intended to disrupt a tribunal (RPC 3.5(d)), not to make statements concerning a judge's integrity or qualifications that the lawyer knows to be false or with reckless disregard as to the statements' truth or falsity (RPC 8.2(a)), and not to act in a way that is prejudicial to the administration of justice (RPC 8.4(d)). We conclude that the State Bar proved that Colin made statements in pleadings to the court concerning the integrity of several justices that he knew to be false or with reckless disregard for their truth or falsity and that he engaged in conduct prejudicial to the administration of justice, but the evidence does not establish that Colin engaged in conduct intended to disrupt a tribunal because the alleged conduct did not occur inside a courtroom or similar setting. Considering the nature of the misconduct and similar discipline cases, we conclude that a six-month-and-one-day suspension serves the purpose of attorney discipline.

*FACTS AND PROCEDURAL HISTORY*

This discipline matter arises out of Colin's representation of condemned inmate Charles Lee Randolph in an appeal from a district court order denying Randolph's second postconviction petition for a writ of habeas corpus. In that matter, former Justice Douglas voluntarily recused himself because he had presided over Randolph's trial, and Chief Justice Gibbons and former Justice Cherry recused themselves because, when they were



district court judges, they had written letters stating that the deputy district attorney who prosecuted Randolph had always been professional in his interactions with them, and those letters were submitted to this court as part of the prosecutor's response to an order to show cause that had been entered in Randolph's direct appeal. The remaining four justices on the court at that time (Justices Pickering, Hardesty, Parraguirre, and Saitta) decided Randolph's second postconviction appeal, affirming the district court's judgment. *Randolph v. State*, Docket No. 57959 (Order of Affirmance, Jan. 24, 2014). The misconduct at issue here involves statements that Colin included in several pleadings filed in the *Randolph* matter after the court entered its disposition.

*Colin's statements in the Randolph matter*

In a petition for rehearing and a motion to disqualify the four justices who signed the *Randolph* disposition, Colin made a number of unsupported and outrageous remarks about the court and the justices, many of which were unrelated to the matter on which he sought rehearing. Those statements included, but are not limited to, the following:

> [The Court had] the audacity to affirmatively "alter" the appellate record to conform to the Court's dishonest actions and claims.
>
> . . . .
>
> [T]he Court took its dishonesty to an unprecedented new level, and . . . the Court affirmatively fabricated a lie, blatantly contrary to the record. . . . Indeed, the Court's own Order proves that the Court is drunk with power, acting like a lawless bully, just lying and cheating to accomplish its evil objective to see Randolph dead.
>
> . . . .
>
> [T]he four Justices . . . are vindictive, dishonest, and totally biased. . . . They have concocted false

and unsupportable legal theories . . . and appear to be willing to do anything to achieve their evil aims.

. . . .

The Justices are dishonest, and that dishonesty is apparent from the record in this case, and also from their active participation in a lengthy and ongoing unconstitutional judicial scheme and conspiracy to circumvent the Nevada Constitution, steal money from the Nevada taxpayers, and put $30,000 unconstitutional dollars a year into their own, and/or their judicial friend's pockets.

. . . .

[T]he Justices are engaged in an ongoing conspiracy to circumvent the Nevada Constitution through bogus "service" on a bogus "Law Library Commission."

Colin's motion to disqualify the four justices was denied as untimely in an order signed by Chief Justice Gibbons on March 25, 2014.

Colin filed a motion to strike the March 25 order and filed another motion to disqualify the four justices and to re-disqualify Chief Justice Gibbons and former Justices Cherry and Douglas, in which he alleged that none of the seven justices could be fair and impartial. In that motion, he made the following statements:

> This Nevada Supreme Court has no respect for the Nevada Constitution, or the law of the United States of America. The Court's despicable and blatantly lawless actions have repeatedly proven this sad truth.
>
> . . . .
>
> [F]airness and honesty are anathema [sic] to this Court, which seeks only to use its brute power to make up lies, get paid, and wrongly blame others for its evil objective—the lynching of Charles Lee Randolph.
>
> . . . .

> Just because seven (7) dishonest elected government officials conspire together to disobey the law, and agree that lies are the truth, it sure doesn't mean their lies actually are the truth.
>
> . . . .
>
> The Nevada Supreme Court works hard to this very day to break the law, make up lies, and complete the judicial lynching of Charles Lee Randolph.

Colin's motions to strike the March 25 order and to disqualify all seven justices were denied in an order signed by Chief Justice Gibbons on September 17, 2014. In that order, Colin was also referred to the State Bar of Nevada for investigation and a determination on the appropriateness of discipline "based on the contemptuous tone and unsubstantiated allegations in the pleadings."

In response, Colin filed a motion to strike the September 17 order, arguing that Chief Justice Gibbons could not resolve the motions as he had recused himself in the matter. In that motion, Colin asserted that "Gibbons' willful illegal behavior seems obviously motivated by a desire to wrongly harm Mr. Randolph and his counsel" and the "vindictive and illegal attempt to 'discipline' undersigned counsel" "is void and illegal, and simply designed to retaliate."

Because the motion to strike the September 17 order was related to the motion to disqualify, the four justices who decided the *Randolph* matter recused themselves from deciding the motion to strike. The Governor appointed three district court judges to decide the motion to strike and, if necessary, the motion to disqualify. The appointed judges granted the motion to strike the March 25 and September 17 orders, concluding that because Chief Justice Gibbons had recused himself, he could not undertake any administrative action in the case. Thereafter, the

appointed judges denied the motions to disqualify the four justices who had decided the *Randolph* matter. The petition for rehearing was then denied.

*Bar proceedings*

Following the referral in the September 17 order, the State Bar filed a disciplinary complaint against Colin in April 2015, alleging that he violated RPC 3.5(d) (conduct intended to disrupt a tribunal), RPC 8.2(a) (false statement concerning the qualifications or integrity of a judge), and RPC 8.4(d) (conduct prejudicial to the administration of justice). Colin filed an answer, in which he admitted to filing the motions to disqualify and strike, generally stating that they were valid and meritorious or reflected his honest opinions or beliefs and generally denying that those pleadings violated the RPCs. The State Bar and Colin entered into a conditional guilty plea agreement, which was reviewed and rejected by a hearing panel.

After the hearing panel rejected the plea agreement, the matter proceeded to a formal, contested hearing. Although Colin was served with a notice of the formal hearing, he failed to appear. During the hearing, the State Bar asserted that Colin's pleadings in the *Randolph* matter violated RPC 3.5, RPC 8.2, and RPC 8.4 because, in them, he demonstrated an unwillingness to pursue proper legal remedies upon receiving a ruling with which he disagreed and instead made numerous unfounded accusations about the integrity, motives, and competence of the supreme court justices. The panel concluded that Colin's persistent conduct over an extended period of time denigrated the legal system and devolved into a personal attack on those attempting to administer justice. Based on those findings and conclusions, the panel recommends this court suspend Colin for one year and require him to pass the Multistate Professional Responsibility Exam as a precondition to seeking reinstatement. The panel also recommends Colin be ordered to pay the costs of the disciplinary proceeding including $2,500

under SCR 120(3). In support of its recommendation, the panel found three aggravating circumstances (refusal to acknowledge the wrongful nature of his conduct, vulnerability of the victim, and substantial experience in the practice of law) and one mitigating circumstance (absence of a prior disciplinary record).

## DISCUSSION

*Colin violated RPC 8.2(a) and RPC 8.4(d) but did not violate RPC 3.5(d)*

Colin contends that the evidence does not support the panel's conclusions that he violated RPC 3.5(d), RPC 8.2(a), or RPC 8.4(d) because "[t]he State Bar of Nevada intentionally lied to the hearing panel in an effort to get [him] disciplined for telling the truth!"[2] (Emphasis omitted.) The State Bar does not directly respond to this argument.

---

[2]While Colin makes numerous other arguments, we conclude he waived those arguments by failing to present them to the hearing panel. *See Old Aztec Mine, Inc. v. Brown*, 97 Nev. 49, 52, 623 P.2d 981, 983 (1981) (explaining that a point not argued below is "waived and will not be considered on appeal").

We acknowledge that Colin presents a novel procedural issue regarding whether the hearing panel was required to render a written decision rejecting his conditional guilty plea agreement. SCR 113(1) provides that a "tendered plea is subject to final approval or rejection by the supreme court if the stated form of discipline includes disbarment or suspension" and SCR 105(2)(e) requires a hearing panel to "render a written decision within 30 days of the conclusion of the hearing." Many other states have specific rules stating that if a hearing panel rejects a conditional guilty plea, the guilty plea is withdrawn and will not be reviewed by the supreme court, *see, e.g.*, Alaska Bar Rule 22(h) (2018); N.J. Rule 1:20-10(b)(3), 1:20-15(g) (2019); N.M. Rule Annotated 17-211 (2019), but Nevada does not have such a rule. We need not consider whether there was a procedural error here because Colin failed to preserve this argument.

The State Bar has the burden of showing by clear and convincing evidence that Colin committed the violations charged. *In re Discipline of Drakulich*, 111 Nev. 1556, 1566, 908 P.2d 709, 715 (1995). To be clear and convincing, evidence "need not possess such a degree of force as to be irresistible, but there must be evidence of tangible facts from which a legitimate inference . . . may be drawn." *In re Discipline of Schaefer*, 117 Nev. 496, 515, 25 P.3d 191, 204 (internal quotations marks omitted), *as modified by* 31 P.3d 365 (2001). Our review of the panel's findings of fact is deferential, SCR 105(3)(b), so long as they are not clearly erroneous and are supported by substantial evidence, *see Sowers v. Forest Hills Subdivision*, 129 Nev. 99, 105, 294 P.3d 427, 432 (2013).[3] But we review any conclusions of law de novo. SCR 105(3)(b). Accordingly, we determine de novo whether the factual findings establish an RPC violation. *See LK Operating, LLC v. Collection Grp., LLC*, 331 P.3d 1147, 1157 (Wash. 2014) (stating, in a legal malpractice action, that "[w]hether a given set of facts establish an RPC violation is a question of law subject to de novo review"); *see also Attorney Grievance Comm'n v. Korotki*, 569 A.2d 1224, 1234 (Md. 1990) (indicating that whether a legal fee violates a disciplinary rule is a question of law).

*RPC 3.5(d)*

RPC 3.5(d) provides that "[a] lawyer shall not engage in conduct intended to disrupt a tribunal." Interpreting the same language in an earlier version of the Rules of Professional Conduct, this court observed that the provision "is designed to guard against in-court disruption of an ongoing proceeding." *In re Discipline of Stuhff*, 108 Nev. 629, 633, 837 P.2d 853, 855 (1992). In *Stuhff*, this court rejected the disciplinary panel's finding that an

---

[3]The deference applied to factual findings in civil matters governs our review of a hearing panel's factual findings because SCR 105(3)(a) provides that bar matters are treated the same as civil actions.

attorney violated an earlier identically worded version of RPC 3.5(d), agreeing with the attorney that the rule "only applies where actual physical or verbal disruption in the courtroom occurs." *Id.* Thus, "[i]f a lawyer takes action outside a courtroom setting, it is virtually impossible that it could 'disrupt' a tribunal or be intended to do so in the sense contemplated by Rule 3.5(d)." 2 Geoffrey C. Hazard, Jr., et al., *The Law of Lawyering* § 34.09, at 34-15 (4th ed. supp. 2019). We see no reason to overrule *Stuhff*. Accordingly, in order for Colin to have violated RPC 3.5(d), his conduct would have had to occur during a tribunal's proceeding.[4]

Colin's conduct did not occur in a courtroom setting. His statements and conduct all occurred in writing, instead of in-person before a tribunal. Thus, his conduct could not have disrupted the tribunal's proceeding in *Randolph* in the sense contemplated by RPC 3.5(d). Accordingly, we conclude that the panel's findings fail to establish that Colin violated RPC 3.5(d).

*RPC 8.2(a)*

RPC 8.2(a) provides that "[a] lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge." No matter the offensive or unkind nature of an attorney's statement, RPC 8.2(a) is limited to statements of fact as opposed to opinion because only statements of fact can be true or false and RPC 8.2(a) is intended to protect the integrity of the judicial system and the public's confidence in it, instead of "protect[ing] judges . . . from unkind or undeserved criticisms." *Attorney*

---

[4]We note that a comment to the current model rule indicates that RPC 3.5(d) can apply to disruptive conduct during "any proceeding of a tribunal, including a deposition." Model Rules of Prof'l Conduct R. 3.5 cmt. 5 (Am. Bar Ass'n 2018).

*Grievance Comm'n v. Frost*, 85 A.3d 264, 274 (Md. 2014). Thus, based on the rule's plain language, there are three elements to an RPC 8.2(a) violation: an attorney makes (1) a statement of fact that (2) impugns the judge's integrity or qualifications, (3) knowing the statement to be false or with a reckless disregard for the statement's truth. We address each element in turn.

First, while many of Colin's statements about the justices are fairly characterized as opinions, substantial evidence supports the panel's findings that at least some of them were statements of fact. The strongest examples of factual statements include Colin's statements that the justices "affirmatively 'alter[ed]' the appellate record"; "affirmatively fabricated a lie, blatantly contrary to the record"; and have actively participated "in a lengthy and ongoing unconstitutional judicial scheme and conspiracy to circumvent the Nevada Constitution, steal money from the Nevada taxpayers, and put $30,000 unconstitutional dollars a year into their own, and/or their judicial friend's pockets" by serving on the Law Library Commission.

Second, substantial evidence supports the panel's findings that Colin's statements concern the qualifications or integrity of the justices. In particular, he accused them of lying, altering the record in a case, engaging in an unconstitutional conspiracy, and stealing money from the taxpayers.

Finally, substantial evidence supports the panel's findings that Colin either knew the statements were false or made the statements with reckless disregard for their truth. In particular, Colin admitted in his affidavit supporting one of the post-judgment disqualification motions that he waited to assert the illegality of the justices' compensation for service on the library commission until after the decision in *Randolph*. He stated that he "considered filing a Motion to Disqualify in 2011 based only on the

SUPREME COURT
OF
NEVADA

(O) 1947A

10

Justice's [sic] unconstitutional participation in the conspiracy to circumvent the Nevada Constitution pursuant to the bogus 'Library Commission' but decided to give the Justices the benefit of the doubt." From that admission, it can be inferred that Colin knew the compensation was not illegal and made the false statement only because the court ruled against his client. At the very least, substantial evidence supports the panel's findings that Colin made those statements with reckless disregard for the truth, as any compensation for service on the Law Library Commission necessarily was authorized by the Legislature.

In sum, the State Bar established by clear and convincing evidence that Colin made statements of fact that impugned the justices' integrity, with knowledge of the statements' falsity or with reckless disregard for whether they were false. Based on that evidence and giving deference to the panel's findings of fact, we conclude that Colin violated RPC 8.2(a).

*RPC 8.4(d)*

Finally, we consider whether the State Bar proved that Colin violated RPC 8.4(d). RPC 8.4(d) provides that it is misconduct for an attorney to "[e]ngage in conduct that is prejudicial to the administration of justice." Interpreting the same language in an earlier version of RPC 8.4(d), this court observed "that conduct that intentionally interferes with the criminal justice and civil litigation processes generally is prejudicial to the administration of justice." *Stuhff*, 108 Nev. at 633-34, 837 P.2d at 855. For purposes of this rule, "prejudice" requires "either repeated conduct causing some harm to the administration of justice or a single act causing substantial harm to the administration of justice." *Id.* at 634, 837 P.2d at 855 (emphasis omitted). Unlike RPC 3.5(d) discussed above, RPC 8.4(d) can be used to address conduct that occurs outside of a courtroom and is

SUPREME COURT
OF
NEVADA

(O) 1947A

11

intended to or does disrupt a tribunal. *See id.* at 633-37, 837 P.2d at 855-57 (imposing discipline under earlier version of RPC 8.4(d) to conduct that occurred outside the courtroom but was intended to interfere with a court proceeding).

Colin made repeated efforts to disqualify the four justices who decided *Randolph* in an effort to either delay the proceedings or obtain another panel of judges to decide the case anew. In particular, he filed motions to disqualify *after* the justices had entered a decision on the merits and made serious charges of ethical and criminal violations by the justices without any supporting factual allegations or cogent argument supported by legal authority. From that conduct it can be inferred that Colin intended to manipulate the appellate process by delaying the proceedings and obtaining a new panel of judges to decide the case. His post-judgment motion practice significantly delayed the final resolution of the *Randolph* matter. Based on that evidence and giving deference to the panel's findings of fact, we conclude that Colin violated RPC 8.4(d).

*The appropriate discipline*

Lastly, we turn to the appropriate discipline for Colin's violations of RPC 8.2(a) and RPC 8.4(d). The hearing panel recommended a one-year suspension and passage of the Multistate Professional Responsibility Examination as a condition of reinstatement. Although that recommendation is persuasive, *Schaefer*, 117 Nev. at 515, 25 P.3d at 204, we determine the appropriate discipline de novo, SCR 105(3)(b). In doing so, we weigh fours factors: "the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors." *In re Discipline of Lerner*, 124 Nev. 1232, 1246, 197 P.3d 1067, 1077 (2008).

Colin violated duties owed to the legal system: making false statements about the integrity of a judge and engaging in conduct prejudicial to the administration of justice. Colin's mental state was knowing, as he knew that if he sought to disqualify all of the supreme court justices, the *Randolph* matter would be, at the very least, delayed. Colin's misconduct harmed the legal system and likely the public's perception of the legal system. The baseline sanction for his misconduct, before consideration of aggravating and mitigating circumstances, is suspension. *See Compendium of Professional Responsibility Rules and Standards: Standards for Imposing Lawyer Sanctions*, Standard 6.12 (Am. Bar Ass'n 2018) (recommending suspension for knowingly making false statements to the court and causing an adverse or potentially adverse effect on the legal proceeding); *id.*, Standard 7.2 ("Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system.").

The panel found and the record supports two aggravating circumstances (refusal to acknowledge the wrongful nature of his conduct and substantial experience in the practice of law) and one mitigating circumstance (absence of a prior disciplinary record). The panel also found a third aggravating circumstance based on the vulnerability of the victim, apparently on the theory that Colin's misconduct delayed justice for Randolph. That is not an appropriate application of the vulnerable-victim aggravating circumstance. When considering whether a victim is "vulnerable," courts typically look at the victim's individual characteristics such as age, level of education or sophistication, and physical or mental disabilities or impairments. *Annotated Standards for Imposing Lawyer Sanctions* § 9.22 (Am. Bar Ass'n 2015) (collecting cases). The record does

SUPREME COURT
OF
NEVADA

(O) 1947A

13

not indicate that Randolph is vulnerable for purposes of this aggravating factor. It also is not entirely clear that Randolph is a "victim" of the professional misconduct at issue, given that RPC 8.2(a) and RPC 8.4(d) implicate duties owed to the legal system rather than a client. Thus, only the first two aggravating circumstances are supported by substantial evidence. Considering the aggravating circumstances and mitigating circumstance together, they do not support a deviation from the baseline sanction of suspension.

Weighing all four factors, we agree with the panel's recommendation that a suspension is appropriate but not with the length of the recommended suspension (one year), which is beyond what is necessary to serve the purpose of attorney discipline. *See State Bar of Nev. v. Claiborne*, 104 Nev. 115, 213, 756 P.2d 464, 527-28 (1988) (explaining that the purpose of attorney discipline is to protect the public, the courts, and the legal profession, not to punish the attorney). This court has imposed shorter suspensions in similar cases. *See In re Discipline of Lord*, Docket No. 73447 (Order of Suspension, Dec. 20, 2017) (suspending attorney for six months and one day where the attorney had interrupted a proceeding and made false accusations about the judge, causing the judge to recuse himself and continue the trial); *In re Discipline of Hafter*, Docket No. 71744 (Order of Suspension, Nov. 17, 2017) (suspending an attorney for six months where the attorney made statements on social networking sites that the judge presiding over one of his matters was biased and anti-Semitic). In light of these similar cases and the relevant factors discussed above, we conclude that the purpose of attorney discipline is achieved through a six-month-and-one-day suspension.

Accordingly, we suspend attorney James A. Colin from the practice of law in Nevada for six months and one day commencing from the

date of this decision. Because the imposed suspension is longer than six months, Colin must petition the State Bar for reinstatement to the practice of law. SCR 116. As a condition to seeking reinstatement, he must take and pass the Multistate Professional Responsibility Exam. Colin shall pay the costs of the disciplinary proceedings, including $2,500 under SCR 120(3), within 30 days of the date of this decision. The parties shall comply with SCR 115 and SCR 121.1.

_____, J.
Stiglich


We concur:

_____, D.J.
Hardy

_____, D.J.
Young

_____, D.J.
Freeman

_____, D.J.
Wanker

_____, D.J.
Lane

SUPREME COURT
OF
NEVADA

(O) 1947A

date of this decision. Because the imposed suspension is longer than six months, Colin must petition the State Bar for reinstatement to the practice of law. SCR 116. As a condition to seeking reinstatement, he must take and pass the Multistate Professional Responsibility Exam. Colin shall pay the costs of the disciplinary proceedings, including $2,500 under SCR 120(3), within 30 days of the date of this decision. The parties shall comply with SCR 115 and SCR 121.1.

_____, J.
Stiglich

We concur:

_____, D.J.
Hardy

_____, D.J.
Young

_____, D.J.
Freeman

_____, D.J.
Wanker

_____, D.J.
Lane

Supreme Court
OF
Nevada

(O) 1947A

date of this decision. Because the imposed suspension is longer than six months, Colin must petition the State Bar for reinstatement to the practice of law. SCR 116. As a condition to seeking reinstatement, he must take and pass the Multistate Professional Responsibility Exam. Colin shall pay the costs of the disciplinary proceedings, including $2,500 under SCR 120(3), within 30 days of the date of this decision. The parties shall comply with SCR 115 and SCR 121.1.

_____, J.
Stiglich

We concur:

_____, D.J.
Hardy

_____, D.J.
Young

_____, D.J.
Freeman

_____, D.J.
Wanker

_____, D.J.
Lane

date of this decision. Because the imposed suspension is longer than six months, Colin must petition the State Bar for reinstatement to the practice of law. SCR 116. As a condition to seeking reinstatement, he must take and pass the Multistate Professional Responsibility Exam. Colin shall pay the costs of the disciplinary proceedings, including $2,500 under SCR 120(3), within 30 days of the date of this decision. The parties shall comply with SCR 115 and SCR 121.1.

_____, J.
Stiglich

We concur:

_____, D.J.
Hardy

_____, D.J.
Young

_____, D.J.
Freeman

_____, D.J.
Walker

_____, D.J.
Lane

SCHLEGELMILCH, D.J., concurring in part and dissenting in part:

I write separately as I do not find the State Bar proved by clear and convincing evidence that the element of "prejudic[e] to the administration of justice" existed as required by RPC 8.4(d).

Colin's behavior clearly violated RPC 8.2(a). The Bar should not view the majority opinion as limiting their ability to disagree with factual or legal determinations made by a Nevada jurist or make valid disqualification affidavits when supported by evidence of bias. Here, Colin's unsupported vexatious attack on the court cannot legitimately be characterized as a professional disagreement with the factual or legal determinations made in the *Randolph* order. In that respect, I concur with the majority in finding the violation of RPC 8.2(a) was well supported by clear and convincing evidence in the record.[1]

I respectfully disagree with the majority's use of inferences to establish that the record supports a finding of prejudice under RPC 8.4(d) and that the actions of Colin "prejudic[ed] . . . the administration of justice." As stated by the majority, "it can be inferred that Colin intended to manipulate the appellate process by delaying the proceedings and obtaining a new panel of judges to decide the case" by repeated efforts to disqualify the justices. Majority, *supra*, at 12. The hearing panel in this matter made none of the findings inferred by the majority in the hearing panel's Findings of Fact, Conclusions of Law and Recommendation. The State Bar complaint

---

[1]I also concur with the majority's conclusion that Colin did not violate RPC 3.5(d) and that by failing to present any evidence or argument at his disciplinary hearing on his other stated grounds, he waived the same.

itself only indicates that Colin "wasted court time and resources." Further, there was no evidence or argument presented relating to Colin's intent in the record of the disciplinary proceeding.

As the majority properly points out, *In re Discipline of Stuhff* sets forth that in order to support a violation of RPC 8.4(d), "prejudice" requires "either repeated conduct causing some harm to the administration of justice or a single act causing substantial harm to the administration of justice." 108 Nev. 629, 634, 837 P.2d 853, 855 (1992) (emphasis omitted); *see also* majority, *supra*, at 11. In *Stuhff*, there were specific supported findings of delay and prejudice found by the hearing panel which were upheld by this court. *Id.* In this matter, the hearing panel did not find that a delay occurred, let alone that Colin had the intent to cause a delay.[2] I cannot infer clear and convincing evidentiary support for "prejudic[e] to the administration of justice" when there was none established or considered by the hearing panel in the record. For those reasons, I dissent from the majority as the State Bar did not present clear and convincing evidence of a violation of RPC 8.4(d) to the hearing panel.

I do concur in the stated discipline for Colin's violation of RPC 8.2(a). That violation, standing alone, in light of the stated aggravating and mitigating circumstances, warrants the imposed discipline as it is in conformity with discipline imposed for similar actions in the past by this court.

_____, D.J.
Schlegelmilch

---

[2]Colin's hearing panel never made any findings that (1) any actual delay occurred, (2) Colin intended to manipulate the appellate process, (3) any delay was attributable to Colin, or (4) any delay was not a result of the administrative processes of the court as described by the majority.